Peter Delabigarre and Margaret, } *appellants,*
his wife,
*against*

Johh Bush,    } *respondent.*

On a bill for a foreclosure and the sale of mortgaged premises, it is not a matter of course to order the whole of the premises to be sold. If the property mortgaged exceed the debt, and can be scparpted, no more ought to be sold than is sufficient to pay the principle, interest, & costs; especially where the property mortgaged consisted of distinct parcels, some of which belonged to the wife of the mortgagor, and the bill was filed by the assignee of the mortgagee, to whom the mortgage had been assigned, as security for a sum less than the original bond given to secure the ultimate balance of account which had not been liquidated between the mortgagor and mortgagee. If the parties in the court below neglect to except to the master's report in a cause, it seems that this court will not enter into an investigation of the calculations made by the master, but will consider the exceptions as waived by the party.

On the 14th *October,* 1800, the respondent filed his bill in the court of chancery, against *Peter W. Livingston, Peter Delabigarre,* and *Margaret,* his wife, certain judgment creditors of *Delabigarre,* and *Andrew Stockholm.* The bill stated that the appellants, on the 15th *March,* 1797, executed a mortgage to *Peter W. Livingston,* for two farms in *Dutchess* county, one undivided fifth part of a lot of ground and houses, in *Pearl-street,* one undivided fifth part of two lots, &c. in *William-street,* and also sixteen lots, therein described, devised to *Margaret Beekman,* and situate in the city of *New-York,* for securing the payment of eight thousand pounds, with interest, in three years from the date, according to the condition of a certain bond of the same date. On the 20th *May,* 1797, the respondent lent *Peter W. Livingston* 7,200 dollars, for which he took his promissory note, payable on the first day of *January,* then next, and an assignment of the above-mentioned bond and mortgage, as security, which assignment contained a condition to be void, on the payment of the note, according to the tenor thereof. The note was not paid at the time, but at the request of *Livingston,* was renewed several times, the last note being dated the 20th *March,* 1798, for 7,500 dollars, including principal and interest, payable in two years; and it was agreed, that the bond and mortgage should remain as security for the new note. On the 20th *July,* 1799, the respondent lent *Livingston* the further sum of 3,274 dollars,

and it was agreed, that the assignment of the bond and mortgage should also be considered as security for the last mentioned sum, and *Livingston* also executed a bond and warrant of attorney, for this sum, on which a judgment was entered up the 20th *November*, 1799, which was the first or eldest judgment against him.  On the 31st day of *January*, 1799, *Livingston* assigned the residue of his right and interest in the said bond and mortgage, to *Andrew Stockholm*.  *Stockholm*, and the judgment creditors of *Delabigarre*, were also made parties to the bill, which prayed a discovery, as to the mortgage, the loans of money by the respondent to *Livingston*, and the assignment of the bond and mortgage, and for a foreclosure of the equity of redemption, &c.

IN ERROR,

ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

On the 9th *February*, 1801, *Peter W. Livingston* put in his answer, in which he admits the bond and mortgage to him, as stated by the complainant.  That he applied to *Bush* for a loan of money, and received 6,200 dollars in money, and gave his note, the 20th *May*, 1797, for 7,200 dollars, including an extra interest on the money lent, and assigned the bond and mortgage as security ; that when the note became payable, he applied to *Bush*, who said he was not the owner of the note, for assistance, who procured for *Livingston* 7,510 dollars, with which he took up the note.  That on the 4th *January*, 1798, he gave to *Bush* his note for 7,500 dollars, payable in thirty days, which note was renewed, from time to time, on *Livingston's* paying to *Bush* different sums, as *extra* interest, for each renewal.  That the note last given was not paid, and it was agreed that the assignment should stand as security for the same.  That the bond for 3,274 dollars, on which a warrant of attorney was given to confess judgment, was executed for that amount, which included several notes given for usurious interest, but he denied that he ever consented that the said bond and mortgage, assigned as above-mentioned, should remain as security

IN ERROR.

ALBANY,
Feb.   )

Delabigarre.
v.
Bush.

also, for the said bond and judgment. He admitted that he assigned his interest in the said bond and mortgage to *Andrew Stockholm.*

An answer of *Delabigarre* and wife was put in, on the 10th *February,* 1801, which was not sworn to, admitting the execution of the bond and mortgage, and denying all knowledge of the transactions between *Bush* and *Livingston.*

Replications having been filed, and the other parties having answered or disclaimed, a decree of foreclosure was entered by consent, and an order of reference was made to the master to report the amount of principal and interest due on the bond and mortgage, and on the note and assignment mentioned in the pleadings, with the value of the mortgaged premises. The report of the master was filed the 24th *May,*1802, and, by consent, was confirmed, and an order entered for the sale of the mortgaged premises, at auction, on the first day of *July* then next; and that the money arising from the sale should be applied to pay the costs of suit, and the principal and interest reported to be due to the respondent, and that the residue of the money should be brought into the court of chancery.

On the petition of *Delabigarre* and wife, the 15th *June,* 1802, the sale of the mortgaged premises was suspended, and leave given to them to put in a further and more perfect answer; and on the 28th *August,* 1802, they filed their answer, admitting the execution of the bond and mortgage, and stating, that the two farms were the property of *Delabigarre,* but that the lots and houses were the property of his wife, That the mortgage was given to secure advances made, upon an interest of more than 7 per cent. per annum, and they specified the particular loans. That though the bond and mortgage was for 20,000 dollars, yet that *Peter W. Livingston* claimed only 12 929 dollars, a great part of which consisted of sums

IN ERROR.

ALBANY,
Feb 1807.

Delabigarre
v.
Bush.

[* 493]

charged for usurious interest, at more than 2 per cent. per month; that by a receipt given by the said *P. W. Livingston*, at the time he received the said bond and mortgage, it was declared to be for the purpose of securing the said sum of 13,629 dollars, and as a further security for the payment [*]of a debt, for which *P. W. L.* had become responsible to *J. R. Livingston*, on account of *Delabigarre*, for 18,083 dollars, deferred stock of the *United States*, at 13*s*. 4*d*. in the pound; and that when *P. W. Livingston* paid for stock, he was to charge *Delabigarre* a further sum of 1,648 dollars.

On the 24th *May*, 1803, after a hearing, the chancellor dismissed the bill as against *Delabigarre* and wife, without prejudice to the other defendants. Upon the application of the complainant, the chancellor granted a rehearing of the cause in *April*, 1804, and directed an issue at law, to try whether the mortgage was given to secure usurious interest, as mentioned in the answer of *Delabigarre*, and whether the items mentioned therein, were parts of the account settled the 15th *March*, 1797, making part of the balance of the 13,929 dollars, mentioned in the receipt.

In *February*, 1805, *Delabigarre* and wife applied, by petition, to the chancellor, to amend their answer, in a certain part, and also to vary the order for the trial of an issue between the parties, so as to leave the question to be tried, general, whether usury or not, without confining it to the specific sums, or items, mentioned. This petition was dismissed, and the order for the trial of an issue discharged. A petition was afterwards filed by *Delabigarre* and wife for a rehearing, which was also ordered to be dismissed, from which order the defendants appealed to this court, but the appeal not being prosecuted, the same was dismissed, and the cause sent back to the court of chancery.

Vol. II. .

IN ERROR.

ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

[* 494]

On the 5th *March*, 1805, an order was made, referring it to a master to report the sum due, for principal and interest, to the complainant, and the sum due on the bond and mortgage, and also the value of the mortgaged premises. On the 4th *April*, 1805, the master reported, that the value of the mortgaged premises was about 20,000 dollars, and that there was due on the bond and mortgage, [*]for principal and interest, 31,277 dollars and 77 cents, and on the assignment to the complainant, 11,169 dollars, which report was confirmed on the 6th *April*, 1805.

On the 7th *April*, 1806, the chancellor ordered, " that the mortgaged premises should be sold at auction, in the city of *New-York*, on the 17th *June* then next, under the direction of a master, giving proper and public notice, and that all proper parties should join in the sale; and that the moneys arising from the sale should be brought into court, to be applied, in the first place, to pay off and discharge the principal and interest reported to be due to the complainant, by the master, together with the interest until the day of payment, and that the residue of the moneys abide the further order of the court respecting the same."

On the application of *Margaret Delabigarre*, the sale was ordered to be postponed to the 17th day of *September*, 1806. On the 11th of *August*, 1806, the petition of *Margaret Delabigarre* was presented to the chancellor, stating that there wese two different reports of the sum due to the complainant below from *P. W. Livingston*, under the assignment, one made on the 20th *May*, 1802, and the other on the 4th *April*, 1805, both of which stood confirmed; that the mortgage was given to secure the ultimate balance of accounts between *Delabigarre* and *P. W. Livingston*, but that no such account had been made; and praying, that it might be referred to a master to examine the two reports, and that he should take and state

IN ERROR.

ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

[* 495]

an account of the dealings and transactions between *De-labigarre* and *P. W. Livingston*, and for that purpose to examine the parties and others, and all proper books and papers ; and that on the payment of the sum found to be justly due to the complainant, from *P. W. Livingston*, he might be decreed to assign the bond and mortgage, as security to such persons as might advance the money for her, or that when the sales of the mortgaged premises should be found to amount to such sum, so to be ascertained,[*] all further sales should cease. On the 20th of *August*, 1806, this petition, after a hearing, was ordered to be dismissed.

On the 6th *September*, 1806, *Delabigarre* and wife appealed to this court, from the decretal order of the chancellor, made on the 7th *April*, 1806, directing the whole of the mortgaged premises to be sold, and from the order of the 20th *August*, 1806, dismissing the petition presented the 11th *August*, and from the order of the 22d *February*, 1805, discharging the order for the trial of an issue in the cause, and dismissing the petition presented on the 13th *February*, 1805.

*Pendleton*, for the appellants. There are two grounds for the appeal in this cause. 1. That more of the mortgaged premises have been directed to be sold than was necessary to pay the principal and interest due to the respondent, with the costs of suit. 2. That the reports of the master were inconsistent and incorrect, and disproved by the facts in the case. 1. Admitting, for the sake of argument, that the sum of 11,169 dollars, reported to be due to the respondent, to be correct, it could not be necessary for any beneficial purpose to the mortgagee, to sell the whole of the mortgaged premises, which were valued at 20,000 dollars. It is unjust and oppressive to compel the sale of the whole of the lands, when a half would be fully adequate to the payment of the debt. The commissions of the master, and all the

IN ERROR.

ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

expenses of sale on the surplus, are thereby incurred, which must aggravate the misfortune of a debtor, whose estate is pledged for a debt that he is unable to pay. It is also a great disadvantage to the mortgagor, to have his real estate converted into money. In case of the claims of third persons, the surplus money will be retained in court, until all those claims are settled. Here, too, a part of the mortgaged premises belonged to the wife of the mortgagor. By the sale her estate is converted into money, and, as such, becomes the property of her husband; whereas, if no more had been sold than was necessary, the [*]residue would have returned to her. In this way, against the policy of the law, the property of the wife might be transferred, and applied to the use of the husband. The wife, by her petition of the 11th day of *August*, 1806, offered to pay the money justly due to the respondent, provided the mortgaged premises might be assigned as security to such person as she could find to advance the money. Where a person, as security for another, pays the debt, the creditor is bound to assign over the security to the surety.* Where the estate of the wife is pledged for the debt of the husband, she is considered as a creditor, and on the payment of the debt, is entitled to the security.† If the friends of *Margaret Delabigarre* were willing to advance the money, to save her estate from being sold, the chancellor should have directed, that on the payment of the debt due to the respondent, the mortgage should be assigned as security. It cannot be pretended, that the intention of ordering the whole of the mortgaged premises to be sold, was for the purpose of paying over the surplus money to *Livingston*. There is no reference to the debt of *Livingston* in the decree. *Livingston* did not apply for any sale, nor was any account taken of what was due to him, except from the face of the bond. And the bond and mortgage was given to secure the ultimate balance of accounts between him and *Delabigarre*.

[* 496]

* 2 *Vernon*, 608. and *Vredenburgh* v. *Stout*, decided in the su preme court, (MS.)
† 2 *Vernon*, 604. 2 *Atk.* 384. 3 *Brown* C. C. 201. 2 *Vernon*, 437. *Ambler*, 150. 2 *Vesey*, 663.

2. A larger sum than the facts of the case will warrant has been decreed to be paid. It may be true, as a general rule, that exceptions to the master's report should be filed in the court below, and that it cannot be inquired into here. But where there are facts appearing in the case, before the court, to show clearly the incorrectness of the report, there is no reason why this court should not interfere. There are two reports which differ from each other, and it does not appear to which of them the decree refers. [Here the counsel entered into an examination of the statement annexed to the report of the master, showing a mistake both in the principal sum and interest of the debt due to the respondent.] Again, where an assignment of a mortgage is made, without the privity of the [*]mortgagor, the assignee must take it, subject to all the equity existing between the mortgagor and mortgagee.* An account, therefore, ought to have been taken between *Livingston* and *Delabigarre*, to ascertain what was really due to the mortgagee. Until this be done, it is impossible to do justice, or to ascertain how much of the lands mortgaged ought to be sold. The appellants ought not to be compelled to pay the respondent, who is an assignee, without the privity of the mortgagor, more than they owed the mortgagee. No such account has been taken, for the master merely computed the interest due on the bond, without any examination or inquiry, as to the real state of the account between them.

*Baldwin* and *Harison*, for the respondent. The rule that the assignee of a mortgage must stand in the place of the assignor, and can receive no more than what is due from the mortgagor to the mortgagee, is too well settled to be disputed. Neither the principles nor authorities which have been cited will be denied. But if the respondent is bound by all the equity existing between the mortgagor and mortgagee, he is entitled, also, to all the rights of the mortgagee; and he is bound to enforce

[* 497]

* 4 *Vesey*,
jun. 118. 9
*Vesey*, jun.
264. 269.

those rights, for he must act for the security of the mortgagee, as well as his own. The rights of the respondent flow from, and necessarily depend on, those of the mortgagee; if the mortgage was tainted with usury, the respondent takes it with all that taint. If the rights of the mortgagee have become extinct by the failure of the consideration, or by payment, those of the respondent are also extinguished. If the rights of the mortgagee cannot be established in this suit, neither can those of the respondent, and the bill ought to have been dismissed. But the claims of the latter, it is admitted, can be established in this suit; and if so, those of the former must be investigated and established also; they cannot be separated. If the appellants can show no usurious or illegal consideration, or payment, what cause have they to complain, or object, though the [*]respondent receives the whole sum due on the mortgage assigned to him. Again, it is a maxim of a court of chancery, that all persons interested must be made parties, that they may have an opportunity of defending their rights, and that by one suit and one decree, the rights of all persons on the subject of controversy, may be finally settled. Suppose this mortgage had been assigned to *A*, to secure the payment of 5,000 dollars, and again to *B*, *C*, and *D*, successively, to secure to each of them, 5,000 dollars. According to the doctrine contended for, that no more of the mortgaged premises should be sold than would be sufficient to pay *A*, the first assignee who files his bill, four suits would be requisite, when the rights of all the parties might be established, and settled by one decree. Yet, it will not be denied, that if *A* files his bill to foreclose, that the mortgagee, and *B*, *C*, and *D*, must be made parties; but for what purpose are they made parties, unless to have their rights inquired into and settled? If, then, the mortgagee is a proper and necessary party, and appears before the court, the accounts between him and the mortgagor may

[* 498]

be inquired into, and adjusted. The respondent, as assignee of the whole mortgage, has a right to demand the inquiry, not only as a preliminary step to establish his own claim, but as the authorized agent and trustee of the mortgagee, under the assignment. This does not contradict, but is perfectly consistent with the rule that one man cannot enforce the 'rights of another, without his consent or authority. The respondent cannot file a bill to foreclose a part only of the equity of redemption. He must proceed for the whole, and act in the double character of principal and trustee. It was proper and necessary, therefore, to make *P. W. Livingston*, the mortgagee, a party in this cause, and being a party, he had a right to be heard. The chancellor had a right to direct an account to be taken between all the parties, and a decree upon the rights of all the parties, before the court, must be conclusive. The master was ordered to report what sum was due upon the bond. It was his duty to summon all the [*]parties before him for that purpose, and we are to presume that they were summoned. If the appellants could have proved that any part of the bond had been paid, they should have appeared and exhibited their proofs before the master. If the master had refused to hear or admit their evidence, they should have applied to the chancellor, who would have directed the master to revise his report, if found incorrect. But the appellants insist on no ground of defence before the master ; they make no exceptions to the report; nay, they consent to a rule that it should be confirmed. They neglect every proper opportunity of making their exceptions in the court below, and, after waiting until a final decree is pronounced, they appeal to this court, and expect that this high tribunal is to execute the humble duties of a master in chancery, and to investigate the truth of facts, which ought to have been established before that officer, in the court below. The master reported the

IN ERROR.

ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

[* 499]

whole of the principal and interest, amounting to the sum of 31,277 dollars, to be due on the bond and mortgage, and that the mortgaged premises were worth only 20,000 dollars. What, then, becomes of all the argument about selling the whole of the mortgaged premises instead of a part? or what ground is there to complain that the rights and interests of the wife are disregarded? A part of a mortgage cannot be assigned to one, and a part to another. The whole must be assigned. The whole money must be paid into court, and after the assignee has been paid his demand, the residue will remain for the benefit of other claimants. If the respondent recovers from the appellants no more than what is due from them to *P. W. Livingston*, they can never complain. They have no right to avail themselves of any transaction between *Livingston* and the respondent. If *Livingston* had thought proper to sell the bond and mortgage for 1,000 dollars, *Bush* would have had a right to insist on the payment of all that was due from the appellants, on the mortgage; so, on the other hand, had *Livingston* assigned the mortgage to the respondent, to [*]secure a debt of 50,000 dollars, he could claim no more from the appellants than what was due from them to *Livingston*. Any transactions or considerations, therefore, existing between the respondent and *Livingston* cannot affect or vary the rights of the appellants, since they have engaged to pay the sum mentioned in the bond and mortgage. But, if the master's report be examined, and the receipt which has been produced, it will be found, that the whole amount reported is justly due. [Here the counsel entered into an examination of the facts relative to the master's report, which, from the opinion delivered by the court, it seems unnecessary to state.]

[* 500]

*T. A. Emmet*, in reply. 1. It is not the usual course, when a bill for a foreclosure is filed, to order the whole of the mortgaged premises to be sold. The rule is to

IN ERROR.

ALBANY,
Feb. · 97.

Delabigarre
v.
Bush.

sell the premises, *or so much thereof* as may be necessary to pay off the debt. It is to be presumed that the premises are of greater value than the debt, since the surplus is directed to be brought into court. In cases of distress for rent, at common law, if the landlord distrain more than is necessary to pay the rent, it is considered as oppressive, and the law has given the tenant a remedy against the injustice of the landlord. In the same spirit ought courts of equity to proceed in regard to mortgages. The principle is, that though the debtor shall be compelled to pay what he owes, he shall not be made to sustain a greater inconvenience than is necessary for that purpose. It is of no use or benefit to sell more than is necessary to pay the debt. The mortgagee wants no more than what is due to him, and to sell more than is necessary is injurious to the mortgagor, since it converts his real estate into money. It may be injurious also to third persons. By the 13th section of the act concerning the court of chancery,* the money arising from all sales of mortgaged premises are to be applied to discharge the debt due to the mortgagee and the costs, and the surplus, if any, is directed to be put out at interest, and to be paid to the mortgagor, or his representatives, on application to the court. The [*]words of the act are mandatory to the chancellor as to the disposition of the surplus. Now, suppose the case of judgment creditors, who by the decision of the court, have a lien on the equity of redemption.* The judgment creditors need not be made parties to a bill of foreclosure. They may not know of any proceedings by the mortgagee. In regard to them, it is *res inter alios acta.* By the sale under the decree, the property mortgaged is transferred to the purchaser. The mortgagor has a right to demand and receive the surplus moneys, remaining in court, and thus the lien, or security of the judgment creditors, may be completely defeated and destroyed. I am aware, that it may be answered,

* 1 *L. N. Y.* 443.

[* 501]

* *Waters and others* v *iew. art. Caines'* Cases in Error.

that the court of chancery, having possession of the money, will not pay it over to the mortgagor, until the judgment creditors are first satisfied. But the language of the act is imperative, and the chancellor has no discretion to exercise; he must order the money to be paid to the mortgagor, if he demand it. Again, suppose four several mortgages on the same premises, and that the second, third, and fourth mortgagees reside out of this state, and the first mortgagee should file his bill for a fourclosure, and the whole premises should be sold, and the residue of the money arising from the sale, after paying off the mortgage, be paid over to the mortgagor. The subsequent mortgagees are no parties to the suit. They might not know of its existence ; and may thus be deprived of their security. But no injury or injustice, of this kind would take place, in regard to third persons, if no more of the mortgaged premises were ordered to be sold, than would be sufficient to pay the debt of the first mortgagee, who files his bill. In the present case the respondent asked no more. It is true that where the mortgaged premises are indivisible, the whole must be sold ; but here the property mortgaged consists of distinct parcels of land, and a portion of it might be sold. Again, a part of the property pledged belongs to the wife, and when converted into money, [*] it loses its inheritable quality, and sinks into the estate of her husband. Her property was a mere pledge, and the court will not allow it to be sold, if there is property of the husband sufficient to pay the debt. She might have asserted her claim by a bill against her husband ; and when the parties are already before the court, why should her rights be overlooked or violated ? There was no necessity, therefore, for selling the whole premises, especially when the respondent in his bill prays for the sale of no more than may be sufficient to pay his debt. But it is said, that there cannot be a sale of a part only of

[* 502]

the mortgaged premises. In the case of *Montgomery* v. *The Marquis of Bath*,* a part of the premises was ordered to be sold. It is true, that was a case of trust; but the principle is the same. The respondent does not appear as the agent or trustee of the mortgagee. *Livingston* is, in fact, opposed to the sale, and is willing that his part should remain on interest. Has the respondent a right to compel these parties to have the whole property sold, and the one to pay and the other to receive his debt against their wishes? It is said, that this ought to be done to prevent a multiplicity of suits, and the expenses of litigation. That, however, is not a sufficient reason for compelling a third person, *nolens volens*, to receive money that he has out on good security, and which both he and the mortgagor are content to have remain on interest. But if my view of the 13th section of the act relative to the court of chancery, be correct, *Livingston* could never obtain his money without filing a bill against the appellants, and thus the mode contended for by the counsel for the respondent, instead of preventing suits, would only serve to open wider the floodgates of litigation.

2. As to the master's report, we are asked, why did not you except to it in the court below, for it is too late to make the objections here. But when the report stands confirmed, and embodied in the decree, it is the same as if the calculations had been made by the chancellor himself.[*] Though the appellants made no exceptions in the court below, yet if it be found that the report is inconsistent with the facts appearing in the pleadings, this court may inquire into it. From the examination of the case, as presented by the pleadings and the report, it is evident, that not more than 6,200 dollars are due to the respondent from the mortgagee. It is important for the appellants to ascertain how much is due to the respondent, that no more property may be sold than is necessary to pay him his just demand. The accounts between *De-*

* 5 *Vesey*, jun. 560.

[* 503]

IN ERROR.

ALBANY,
Feb. 1807,

Delaoi. arre
v.
Bush,

*labigarre* and Livingston, are unsettled, and it may be, that there ·is not so much due to *Livingston*, as the respondent claims. The report is erroneous, as it was made without first ascertaining the amount .due from *Delabigarre* to *Livingston*, by a liquidation of their accounts.— It is manifest from the pleadings that this mortgage was intended to secure the balance that might be ultimately due, on an unsettled account between the mortgagor and mortgagee, and it is impossible, in the present state of the accounts, as they appear in the case, to ascertain what is really due. But it is said, that the master has reported what was due on the mortgage, and that as that report has been confirmed, and no appeal entered within fifteen days, the appellants are concluded by it. I answer, that this rule of limitation applies only to an appeal from interlocutory decrees, and that on an appeal from a final decree, this court may inquire into all the interlocutory matters on which such final decree was founded. The order of reference to the master did not direct him to take up and examine the accounts between *Delabigarre* and *Livingston*. It was no more than a reference to him to calculate the interest, and the amount which might appear to be due on the face of the bond. It is impossible that justice can be done, without first ascertaining what is due to *Livingston* on the mortgage. The respondent cannot fairly object to this, since he took the assignment without giving notice to the appellants, or requesting them to join in the assignment.

[* 504]       [*]THOMPSON, J. The first question presented by the present appeal, is, whether the decree for a sale should have extended to the whole of the mortgaged premises, or been limited to such portion as would have been sufficient to satisfy the respondent's demand. I cannot assent to the proposition, that, on the foreclosure of a mortgage, it is matter of course to order a sale of all the mortgaged premises. I see no beneficial purpose to be answered by

such a course as it respects the rights of the mortgagee. All that he can with propriety, require, is a full satisfaction of his demand. It is well known, that, in most cases, the value of the mortgaged premises far exceeds the sum intended to be secured by the mortgage, and if the mortgagor is so unfortunate as to be unable to redeem his land, I am at a loss to discover any good reason why he should be compelled to part with the whole, whereby a variety of unnecessary expenses will be added to the loss resulting from a forced sale. There can, perhaps, be no general rule on the subject, each case must depend on its own circumstances. The situation of the mortgaged premises may be such as to render it impracticable to sell in parcels. That embarrassment, however, does not exist in the case before us. The premises are in separate and distinct parcels, and the circumstance that a great portion of the mortgaged property belonged to Mrs. *Delabigarre*, presents a strong and cogent reason for restricting the sale to a bare sufficiency to satisfy the respondent's demand; otherwise, the real estate of the wife will be converted into personal property, and be subject to the absolute disposal of the husband. The assignment of the mortgage to the respondent for the security of a debt due from the mortgagee to him, cannot impose on him the obligation of seeking a sale of the whole premises, against the will of the mortgagee. I say, against his will, because, such appears to me to be the necessary inference from the whole of the proceedings. If *Peter W. Livingston* had wished for a settlement of the accounts between *Delabigarre* and himself, and for a sale of the premises on his own account,[*] why was he not made a complainant, instead of a defendant, in the cause? If it be admitted, by the appellants, that there was enough due on the mortgage to satisfy the respondent's claim, I see no propriety in the latter's forcing a settlement of the concerns between the mortgagor and mortgagee. Although the

[* 505]

IN ERROR.

ALBANY,
Feb. 1807

Delabigarre
v.
Bush.

mortgage purports, upon the face of it to be for securing twenty thousand dollars, yet it is not pretended, that that was the real sum due to the mortgagee, but on the contrary, it is admitted, that the purpose for which the mortgage was given, was to secure the balance of an unsettled account. The real object of the mortgage appears, by an instrument bearing even date with it, given by *Livingston* to *Delabigarre*, by which he acknowledges that the bond and mortgage were given to secure the payment of 13,929 dollars, due upon settlement of accounts on that day, and as a further security for the payment of a debt, for which *Peter W. Livingston* may have become responsible to *John R. Livingston*, for *Delabigarre*, for stock of the *United States;* and upon the contingency of *P. W. Livingston's* paying *John R. Livingston* for the stock, he is to charge *Delabigarre* the further sum of 1,648 dollars. This instrument concludes with declaring, that upon payment of the above sums of money, with the interest to *P. W. Livingston*, in the time mentioned in the bond and mortgage, and all *other demands* which he may have against *Delabigarre*, the bond and mortgage are to be legally cancelled. The extent of the demands of *P. W. Livingston* against *Delabigarre*, exclusive of the 13,929 dollars, is altogether unascertained. The appellants, in their answer, deny that the stock ever was delivered to them, or applied to their use, and no proof was given on that subject, except the instrument above referred to ; by which, I think, it clearly appears, that, with respect to the stock purchased from *J. R. Livingston*, *P. W. Livingston* can only be considered as surety for *Delabigarre*, admitting the latter to have received it. But there is no legal evidence that *P. W. Livingston* has paid for this

[*506]

stock, or been, in any way, injured in consequence [*] of his suretyship. The account between *Delabigarre* and *Livingston* never has been settled. The reference to the master was general, to report the sum due on the bond

and mortgage, for principal and interest. The report of the master, on this part of the reference, was simply a calculation of interest upon the nominal sum contained in the bond. But as this was not the real consideration for which the mortgage was given, it remains yet undetermined, how much was due upon it. The appellant's answer, and the instrument above referred to, show at least 13,929 dollars to be due, which is more than the amount of the respondent's demand; no objection, can, therefore, be made to a sale of enough of the mortgaged premises for the satisfaction of this demand, and the costs of suit. It was justly urged by the respondent's counsel, that courts ought to avoid a multiplication of suits, and not leave to be settled by several suits, what might be accomplished by one. But a sale of the whole of the mortgaged premises, will not effect this desirable end. The rights of the respective claimants to this mortgage are not so far ascertained, as to enable the court to make a final distribution of the money. The decree of the court below does not extend thus far. The surplus money, after paying the respondent's demand, is directed to be brought into court, to abide its further order respecting the same. No litigation is, therefore, prevented by this course; for if the rights of the respective claimants are not so far ascertained, as to enable the court to make a final distribution of the money, further litigation is indispensable. Considering, therefore, that the real consideration of the mortgage was an ultimate balance of accounts between *Delabigarre* and *Livingston*, and that such balance never has been ascertained, and that *Livingston* cannot be considered, in this suit, as seeking a settlement of such accounts, or claiming payment of any money to himself; but, on the contrary, must be viewed as opposing a foreclosure, and that a sale of the whole of the mortgaged premises, might materially injure Mrs. *Delagibarre*, without answering any beneficial purpose to the respond-

ent, I think the decree for a sale should have been limited, so as to embrace only sufficient property to satisfy the respondent's demand.

2. It has been urged, as another ground of exception against the decree of the court below, that it directs a payment of the principal and interest, reported by the master to be due to the respondent; and that there have been two reports of a master, so that it was left uncertain to which the decree referred. This objection appears not to be well founded in point of fact. Although there was a report of a master made in *May*, 1802, yet this report was afterwards vacated, together with all the proceedings connected with it. The final decree could, therefore, have no reference to it, and the only report recognised as valid, was the one of the 4th of *April*, 1805. If any well-grounded objection could be made to this report, I should much doubt whether the appellants could avail themselves of it here. The exceptions should have been taken in the court below. We cannot know the evidence the master had before him; nor can it be proper here, to go into calculations made by the master. If the parties have neglected to except to the report, I should consider it a waiver of all exceptions. I am, however, unable to discover any mistake. The report consists in a mere calculation of interest upon 7,200 dollars, from the time of the assignment of the mortgage, which was on the 20th of *May*, 1797. *Peter W. Livingston*, in his answer, admits that he gave the respondent his note for that sum, payable with interest, and that the bond and mortgage were assigned by him to secure the payment of the same. On the second reference, there was no proof or admission of any payments having been made on this note, and no notice ought to have been taken of what passed on the former reference. The second objection, therefore, to the decree, appears to me not to be well founded.

The result of my opinion is, that the cause be sent back to the court of chancery, to the end that the decree for a sale of the mortgaged premises may be so modified as to embrace only a sufficiency, as nearly as may be, (including such parts thereof as belong to *Delabigarre*, in his own right) to satisfy the respondent's demand, with the costs of suit ; and also for the purpose of having the accounts between *Delabigarre* and *Livingston* settled, and the real balance ascertained : and that further sales, if necessary, be hereafter ordered by the court below, to satisfy such balance, when ascertained, together with the costs.

KENT, Ch. J., declared himself to be of the same opinion.

TOMPKINS, J., having been formerly concerned as counsel in the cause, gave no opinion.

L'HOMMEDIEU, senator. I am of opinion, that the decree in this cause ought to be reversed. 1. The original mortgage was given to secure whatever might be due, on a balance of accounts, from the appellants to *Peter W. Livingston.* As the mortgage was assigned to the respondent without notice, he must take it, subject to an account between the mortgagor and mortgagee. No such account has been taken, and it is, therefore, uncertain how much, or whether any thing, is due from *Delabigarre* to *Peter W. Livingston.*

2. The master's report of the 4th *April*, 1805, is the foundation of the decree, and ought to be considered as part of it ; and may, therefore, be inquired into by this court. That report appears to be erroneous, in allowing interest from the 20th *March*, 1797, to the 20th *March*, 1800, though the bill acknowledged that the interest for that period had been paid. It appears, also, that 1,000 dollars of principal have been allowed to the respondent, when it is evident from the answer of *P. W. Livingston*, which is not contradicted, that only 6,200 dollars were

IN ERROR.
ALBANY,
Feb. 1807.

Delabigarre
v.
Bush.

[* 509]

advanced. When the report was made on the 20th *May*, 1802, the respondent admitted, that the 1,000 dollars were not due. And though that report was, afterwards, set aside, yet it is so far evidence of the admission of the respondent, who [*]ought to be bound by it, in the future adjustments of the account.

3. The decree directs the whole mortgaged premises to be sold, when the respondent, in his bill, prayed for no more than the sum due to him ; and *P. W. Livingston*, the mortgagee, did not wish for any sale to pay what might be due to him. There was no necessity, therefore, for selling more than was sufficient to pay the respondent ; and it was erroneous in the court of chancery to decree the payment of any further sum, or to order the money to be raised and brought into court ; thereby putting an end to the landed security on which the parties were willing the loan should continue. I am, therefore, of opinion, that no more of the mortgaged premises should be sold than is sufficient to pay the debt due to the respondent, and that the property of the husband be first applied to that purpose ; and, in case that should be insufficient, that then so much of the lands belonging to the wife should be sold, as may make up the deficiency ; or that, on payment of the principal and interest due to the respondent, the securities should be assigned to that amount to such person as the appellant, *Margaret Delabigarre*, shall nominate.

The rest of the court concurring in the opinion delivered by Mr. Justice *Thompson*, it was thereupon ORDERED, ADJUDGED, and DECREED, that the decree in the court below, of the 7th *April*, 1806, be modified, so that such part only of the mortgaged premises as belong to *Peter Delabigarre*, and if not sufficient, then, together with so much of the mortgaged premises as belong to *Margaret Delabigarre*, be sold, as will satisfy the amount of the demand reported in favour of the respondent, and approved

of by the said decree, together with the costs and interest: And that the said court take such further steps as shall be deemed proper, to ascertain the remaining sum due from the said *Peter Delahigarre*, on the said bond and mortgage, and when ascertained, that the residue of the said [*]mortgaged premises, or such part thereof as shall be requisite, be sold to satisfy such balance, together with the costs and expenses chargeable in the court below, and that the proceedings be remitted to the court of chancery.