GEORGE C. TARBELL, Appellant, *v.* JOSEPH I. WEST et al., Respondents.

The registry of a conveyance of an equitable title is notice to a subsequent purchaser of the same interest or title from the same grantor, but is not notice to a purchaser of the legal title from the person who appears by the record to be the real owner.

A purchaser from one member of a firm of his interest acquires no title to any share of the partnership effects, but only to the assignor's share of the surplus after an accounting and adjustment of the partnership affairs, save in the case of a *bona fide* purchaser for value, without notice that it is partnership assets, of land, the legal title to which is either in the grantor solely, or in him and others, apparently as tenants in common.

The firm of W. B. & C. bought with its funds certain real estate for partnership purposes, the title to which was taken in the name of W. In October, 1867, B. executed to plaintiff a mortgage upon his interest individually, and as a member of the firm, in the said real estate, and in the machinery, fixtures and other property in the buildings thereon, which, " taken together, make up the manufactories of said firm." The mortgage soon after its execution was recorded as a mortgage of real estate, and filed as a chattel mortgage. In 1868 a manufacturing corporation was organized to which the property, real and personal, was sold and conveyed, the partners taking stock for their interest. B.'s copartners had no actual notice of the mortgage until 1877. In an action to foreclose the mortgage *held*, that the recording of the mortgage was not notice under the recording acts to the copartners or the corporation; that assuming the mortgage, although it did not attach to the legal title, was an instrument by which the title to the real estate might be affected, and therefore the subject of record (1 R. S. 762, § 38), the record was not notice to the purchaser from W. of the legal title, with which, so far as appeared from the record, B. had no connection.

Also *held*, that the filing of the instrument as a chattel mortgage was not notice of its existence, as the unliquidated interest of B. in the assets of the firm did not make him the owner of specific goods and chattels possessed by the firm, and the mortgage conveyed no interest in the partnership effects.

At the time of the purchase by and conveyance to the corporation, B. was one of its directors and took part as such in the transaction. *Held* that, conceding the corporation was chargeable with B.'s knowledge (as to which *quære*), such notice did not invalidate the transaction or create any equity against defendants, or against the firm assets, so transferred ; that the sale was within the legitimate powers of the firm and the corporation acquired a good title; and that it violated no legal or equitable right of the plaintiff in issuing stock to B. to represent his interest.

This action was brought nine years after the conveyance to the corporation, and after B. had become insolvent and had sold the stock received by him for his interest. *Held,* that plaintiff's lien, after the transfer to the corporation, attached to the stock issued to B., which he could have enforced while it was in B.'s hands; but that neither of the copartners nor the corporation were bound to see to the application of stock, or to take affirmative measures to protect plaintiff's lien.

(Argued June 18, 1881 ; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 5, 1881, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed by defendant Bradley to the plaintiff, of all the mortgagor's " right, title and interest individually, and as a member of the firm of West, Bradley & Cary, in and to " certain real estate described ; " also all the engines, boilers, machinery, fixtures and other property " in the buildings on the premises described, " which taken together make up the manufactories of said firm."

The mortgage was executed October 11, 1867, and was, on the 16th of that month, recorded as a mortgage of real estate, and filed as a chattel mortgage. The property described was bought by and paid for out of the funds of the firm. The title to the real estate was taken in the name of West. The firm continued in business until February, 1868, when a manufacturing corporation was organized under the name of the West, Bradley & Cary Manufacturing Company, defendants herein, for the purpose of carrying on the business, to which corporation all the property and assets of the firm were transferred, the partners taking stock for their respective interests except one, a special partner, who received payment in cash. Certificates for stock for the amount allotted to Bradley for his interest were issued to him. These he subsequently transferred, and thereafter became insolvent. He was one of the directors of

·the corporation at the time of the transfer. Bradley's partners had no actual notice of the mortgage until 1877.

*Geo. H. Yeaman* for appellant. Bradley, as one of the partners, had an interest in the real and personal property, which he, without the action, knowledge or consent of the other partners, could sell or mortgage. (*Field* v. *Hunt*, 24 How. Pr. 463; *Treadwell* v. *Williams*, 9 Bosw. 649; Lindley on Partnership, 718; *Smith* v. *Evans*, 37 Ind. 526–532; 2 Spence's Equity, 614, 764; 1 Powell on Mortgages, 17; 2 Bouvier's Law Dictionary, 189.) Even an equitable or contingent interest may be mortgaged. (*Crane* v. *Turner*, 7 Hun, 358; *Stoddard* v. *Whiting*, 46 N. Y. 627, 532; 1 Powell on Mortgages, 17; 2 id. [4th ed.] 79; 2 Bouvier's Law Dictionary, 189; *McCaffrey* v. *Wooden*, 65 N. Y. 465, 466.) And the record of such a mortgage is notice under the recording acts. (*Crane* v. *Turner*, 7 Hun, 358; *S. C.*, 67 N. Y. 439; *Spraights* v. *Hawley*, 39 id. 441, 445; 2 Spence's Eq. 764; *Marsh* v. *Woodbury*, 1 Metc. 436; *Williamson* v. *N. J. S. R. Co.*, 11 C. E. Green, 398; *Bacon* v. *Buchan*, 12 id. 209.) Bradley, as owner, could sell, assign or mortgage his interest. (*Walsh* v. *Adams*, 3 Denio, 127; 1 Lindley •on Part., 712, 718; *Treadwell* v. *Williams*, 9 Bosw. 649; Hilliard on Mort., chap. 1, § 4; 4 Kent, 144; 1 Pow. on M. 17, 23; *Crane* v. *Turner*, 7 Hun, 358; *Dupont* v. *McLaren*, 61 Mo. 504; *Smith* v. *Evans*, 37 Ind. 526; Schouler on Pers. Prop. 532–38, 224; 28 N. Y. 360; 22 id. 37; 32 id. 65; *Buchan* v. *Sumner*, 2 Barb. Ch. 167; *Coles* v. *Coles*, 15 Johns. 159; *Hiscock* v. *Phelps*, 49 N. Y. 97; 2 Story's Eq. Jur., § 1012; Thomas on Mort. 35, 38; 3 Stockt. [N. J.] 539; 17 N. Y. 525; *Coles* v. *Coles*, 15 Johns. Ch. 159; *Cavender* v. *Bulteel*, L. R., 9 Ch. App. 79; 71 N. Y. 113; Parsons on Part. 168; *Horton's Appeal*, 1 Harris, 67; *Reice* v. *Hoyt*, 4 Ind. 169; *Berry* v. *Kelly*, 4 Robt. 125; *Hoxie* v. *Carr*, 1 Sumn. 174; Am. Lead Cas. 497; 2 Edw. 28; *Fairchild* v. *Fairchild*, 64 N. Y. 475.) The defendants had notice of plaintiff's mortgage, it having been duly recorded as a mortgage of real estate. (*Sanger*

v. *Eastwood*, 19 Wend. 515; *Gregory* v. *Thomas*, 20 id. 17; 2 R. S. 762, § 38; *Johnson* v. *Stagg*, 2 Johns. 516; *Crane* v. *Turner*, 7 Hun, 357; *Teft* v. *Munson*, 57 N. Y. 97; *Gillig* v. *Maas*, 20 id. 213; *Morris* v. *Wadsworth*, 17 Wend. 103; *Dimon* v. *Dunn*, 15 N. Y. 498; *Young* v. *Wilson*, 27 id. 351; Thomas, 154; *Bk. of U. S.* v. *Davis*, 2 Hill, 451; 3 N. Y. 156; 4 Paige, 128; *Smith* v. *Smith*, 2 C. & M. 232; *Cavender* v. *Bulteel*, L. R., 9 Ch. App. 79; 2 Spence's Eq. Juris. 859; *James* v. *Cowing*, Gen. Term, March, 1879; *Wisner* v. *Ocumpaugh*, 71 N. Y. 116; *Hoffman S. C. Co.* v. *Cumberland C. & J. Co.*, 16 Md. 499–511; *Smith* v. *Smith*, 2 C. & M. 231; Thomas on Mortgages, 149, 153; *Haywood* v. *Shaw*, 16 How. 110; *North River Bank* v. *Aymar*, 3 Hill, 274; *Ingall* v. *Morgan*, 10 N. Y. 178; *Sheldon* v. *Cox*, 2 Eden, 226, 228; 2 Stockton, 119; 3 N. Y. 156; 2 Hill, 451; 4 Paige, 127; 13 N. H. 149; 1 Keen, 154; Thomas on Mortgages, 148, 149; 15 N. Y. 498; 27 id. 351; 17 Wend. 103; 7 Lans. 376; *Williams* v. *Birbeck*, 1 Hoff. Ch. 360; *Tuttle* v. *Jackson*, 6 Wend. 213; 2 Paige, 300; 5 Johns. Ch. 30; 1 Meriv. 282; *Crane* v. *Turner*, 7 Hun, 357; *Williamson* v. *Brown*, 15 N. Y. 354; *Baker* v. *Bliss*, 39 id. 79; 1 Johns. Ch. 394; 22 N. Y. 380; 2 Johns. 524; 4 id. 216; 61 N. Y. 103; 3 Stockton, 539; 27 N. Y. 354; 20 id. 402; 1 Lindley on Part. 306; *Empire Mill Co.* v. *C. M. Co.*, 4 Fisher, 28; 16 Md. 500–511; *Fulton Bank* v. *N. Y. C. Co.*, 4 Paige, 127; Angel & Ames on Corp. § 306; *Grimston* v. *Carter*, 3 Paige, 436.) Even if plaintiff's mortgage had not been effective as a mortgage and had imposed no technical lien, it was good and operative as an assignment, and the defendants were not entitled to notice, either actual or constructive. (1 Barb. Ch. 105; 36 N. Y. 128, 52; 1 Paige, 131; 9 Cowen, 316; 1 Sandf. Ch. 569; 57 N. Y. 133; 47 id. 225, 255; *Douglas* v. *Ireland*, Ct. of App., March, 1879; *Frost* v. *Beekman*, 1 Johns. Ch. 301; 3 Sugden on Vend. and Purch. 440; *Young* v. *Wilson*, 27 N. Y. 354; 18 Wend. 407; 6 Paige, 183, 338; *Schafer* v. *Reilly*, 50 N. Y. 66, 67; 1 Johns. Ch. 301; 3 Sugden on Vend. and Purch. 440; 27 N. Y. 354.) The firm of West, Bradley & Cary was a general and not a limited part-

nership, and Henderson a general and not a special partner therein, with all the duties, liabilities and responsibilities as trustee and otherwise of a general partner. (1 Pars. on Part. 194, 202; 3 Kent, 64; Pars. on Part. 249; star p. 238; *Haveland* v. *Chace,* 39 Barb. 288; *Merritt* v. *Van Santford,* 34 N. Y. 208; *Durant* v. *Abendroth,* 69 id. 148; *Lachaise* v. *Marks,* 4 E. D. Smith, 610; *Lawrence* v. *Merrifield,* Ct. of App., March 19, 1878; Wait's Actions and Defenses, 115, 116; *Coles* v. *Coles,* 15 Johns. 159; 3 Kent, 37; Coll. on Part. 108, 123; Lindley on Part. 547, 712, 718; 6 Cow. 441; Parsons on Part. 363, 380, 392; star pp. 350–370; Schouler on Pers. Prop. 224, 532–538; *Reed* v. *Hollingshead,* 4 B. & C. 873–878; *Treadwell* v. *Williams,* 9 Bosw. 649; Gow. on Part. 5; Parsons on Part. 391, 39; 1 Hilliard on Mort. 18, § 23; note *b,* vol. 2, 353, § 14; Story on Part., § 23; Thomas on Mort. 35; 3 Kent, 54, 59; 34 N. Y. 208.) Strangers are not presumed to know, and third persons are not required to take notice of unusual contracts or restrictions in articles of copartnership. (*S. C. Bk.* v. *Case,* 8 B. & C. 427; 2 Man. & Ry. 459; *Smith* v. *Jameson,* 5 T. R. 601; *Wilbraham* v. *Livesey,* 18 Beav. 209; Pars. on Part. 233, 243, 244, 354, 367; *Penn* v. *Stow,* 10 Ala. 209; *Marquard* v. *N. Y. Mfy. Co.,* 17 Johns. 528–535; *Merrick* v. *Brainard,* 38 Barb. 574; 34 N. Y. 208; 1 Lindley on Part. 214; Pars. on Cont. 130, and note to 170, 171; *Caldwell* v. *Lieber,* 7 Paige, 483–495; *Loader* v. *Burton,* 36 Vt. 652; *Phillips* v. *Cook,* 24 Wend. 395.) The *bona fides* of the mortgagee and plaintiff is shown and conclusively proved by selling his government bonds and advancing $50,000 at simple interest on the security and faith of this mortgage; also by the due and immediate filing of the same as a mortgage of personal property, and recording it as a mortgage of real estate; by the impossibility of the immediate delivery of the mortgaged goods and chattels because of the fact of owning same jointly with others. (*Cole* v. *White,* 26 Wend. 521; *Stoddart* v. *Butler,* 20 id. 545; *Hoe* v. *Acker,* 23 id. 653; *Frost* v. *Mott,* 34 N. Y. 255; 19 · Wend. 523; 42 Barb.

94; *Griswold* v. *Sheldon,* 4 N. Y. 581; Herman on Chattel
Mortgages, 148, 149; *Groat* v. *Rees,* 20 Barb. 26; *Thompson* v. *Blanchard,* 4 Com. 307; 23 Wend. 674–679.) The
question does not properly arise in this case. (*Gordon* v.
*Kelley,* 42 Barb. 194; Thomas on Mort. 480; *Smith* v. *Post,* 1
Hun, 516; 42 Barb. 194; 10 Wend. 514, 523; *Fairbanks* v.
*Bloomfield,* 5 Duer, 434; *Brown* v. *Platt,* 8 Bosw. 324; *Van
Heusen* v. *Radcliff,* 17 N. Y. 580; 22 id. 564; 52 id. 138; 59
id. 544; 20 Wend. 17; *Thompson* v. *Vant,* 27 N. Y. 568; 28 id.
278; *Van Heusen* v. *Radcliff,* 17 N. Y. 583; 37 Barb. 571;
26 Johns. 637; 6 Hill, 93; 47 Barb. 29; 5 Abb. 458; *Weaver*
v. *Barden,* 49 N. Y. 286, 2 White & Tudor's Eq. Cas. 77; *Price*
v. *McDonald,* 1 Md. 423; 16 id. 500–511; 1 Johns. Ch. 566;
2 id. 15; 1 Cow. 622; 1 Barb. Ch. 105; 57 N. Y. 133; 63 id. 93;
*Boynton* v. *Hatch,* 47 N. Y. 225; *Douglas* v. *Ireland,* Ct. of
App., March, 1878; *McGoldrick* v. *Willets,* 52 N. Y. 619.)
A *bona fide* purchaser of personal property from one having
the possession acquires no better title than his vendor, not
even when the purchaser paid full price in good faith. (*Ballard* v. *Burgett,* 40 N. Y. 315; *Austin* v. *Dye,* 46 id. 500;
*Spraight* v. *Hawley,* 39 id. 441, 444–448.)

*S. P. Nash* for respondents. The effect of the transfer was
not to charge the property described, but simply to give to
plaintiff, as transferee of Bradley, the right to have the firm
wound up, and the amount which he found due to Bradley
paid over. (Lindl. on Partn. [3d Eng. ed.] 718; *Menagh* v.
*Whitwell,* 52 N. Y. 146; *Morss* v. *Gleason,* 6 id. 204; *Staats*
v. *Bristow,* 73 id. 264.) Plaintiff, by allowing Bradley to deal
with his interest as partner precisely as though he had made
no transfer of such interest, made him his agent in the liquidation, and is bound by his acts. (*Kelly* v. *Hutton,* L. R., 3
Ch. App. 704; *Conkling* v. *Shelley,* 28 N. Y. 360; *Southard*
v. *Benner,* 72 id. 424.) Notice of Bradley's transfer was essential to charge the defendants as trustees. (*Heermans* v.
*Ellsworth,* 64 N. Y. 159.) The recording of plaintiff's mortgage as a mortgage of real estate was not notice to the West,

Bradley & Cary Manufacturing Company. (*Cook* v. *Travis*, 20 N. Y. 402; 1 R. S. 756, § 1; 762, § 70; *Crane* v. *Turner*, 7 Hun, 357; 67 N. Y. 437.) The filing of the mortgage as a chattel mortgage was inoperative, as well against the firm as against persons desiring title to any of the property from the firm. (Laws of 1833, chap. 279; 3 R. S. [Banks' ed.] 142; *Brese* v. *Bang*, 2 E. D. Smith, 474; *Bartee* v. *Gilbert*, 12 Abb. 97; *Wood* v. *Lester*, 29 Barb. 145; *Williamson* v. *N. J. R. R. Co.*, 26 N. J. Eq. 389; *Marsh* v. *Woodbury*, 42 Mass. 436; *Putnam* v. *Westcott*, 19 Johns. 73.) Nor were the other members of the firm chargeable with knowledge of Bradley's act in making the mortgage, because such act was in fraud of the firm. (Lindl. on Partn. [3d Eng. ed.] 304.)

Andrews, J. The plaintiff, when he took his mortgage, had notice that the mortgaged property, was partnership assets, of West, Bradley & Cary. The mortgage recites, that the real estate, fixtures, machinery and personal property, embraced in the mortgage, together, make up the manufactories of the firm, and the mortgage purports to convey only Bradley's interest individually, and as a member of the firm, therein. The record title to the real estate mortgaged, was in West, one of the partners; but the proofs and the findings establish, that it was partnership property, bought for partnership uses, paid for out of partnership funds, and used in the partnership business. The members of the firm, other than the mortgagor, had no actual notice of the mortgage until 1877, nearly ten years after the mortgage was executed, and more than nine years after the organization of the "West, Bradley & Cary Manufacturing Company," and its purchase of the property. But it is claimed that the other partners, and the corporation defendant, had constructive notice of the mortgage, by the record, and by its having been filed, as a mortgage of chattels. The mortgage was recorded as a mortgage of real estate, and was also filed as a chattel mortgage soon after its execution.

We cannot assent to the proposition of the learned counsel for the plaintiff, that the recording of the mortgage, was notice

under the recording acts, to the other partners, or to the corporation defendant, of its existence. The mortgagor, Bradley, had no legal title to the land, nor any legal estate therein, when the mortgage was executed. His interest, was an interest in the land as part of the partnership assets, of West, Bradley & Cary. The legal title, as has been stated, was in West, and whatever Bradley's interest was, it was equitable merely. It was an interest which he could sell, or mortgage, but he had nothing separately in the land, or in the *corpus* of the partnership assets. It is now well settled, that a purchaser from one partner, of his interest in the partnership, acquires no title to any share of the partnership effects, but only his share of the surplus, after an accounting, and the adjustment of the partnership affairs. (*Menagh* v. *Whitwell,* 52 N. Y. 147, and cases cited.) But where the legal title to partnership lands, is vested in one partner, his *bona fide* grantee, or mortgagee, takes his title, free from the equities, of the other partners, or of copartnership creditors. But if he have notice that the land is partnership assets, he takes subject to their equities. (*Buchan* v. *Sumner,* 2 Barb. Ch. 167; *Hoxie* v. *Carr,* 1 Sumn. 183; *Hiscock* v. *Phelps,* 49 N. Y. 97; *Cavander* v. *Bulteel,* L. R., 9 Ch. App. Cas. 79.) The equitable interest of Bradley in the land, which was, as we have said, to have it applied to partnership uses, and to have paid over to him his share of the surplus, was, as between him and the plaintiff, charged by the mortgage as security for the plaintiff's debt; and we shall assume, for the purpose of determining the question of notice under the recording acts, that the mortgage, although it did not attach to the legal title, was an instrument, within the *thirty-eighth* section, by which the title to the real estate described therein, might be affected in law or equity, and therefore the subject of record. (1 R. S. 762, § 38.) It is now the prevailing doctrine that conveyances of equitable interests in land, are within the recording acts (*Parkist* v. *Alexander,* 1 Johns. Ch. 394; *Johnson* v. *Stagg,* 2 Johns. 509; *Hunt* v. *Johnson,* 19 N. Y. 281; *Stoddard* v. *Whiting,* 46 id. 627; *U. S. Ins. Co.* v. *Shriver,* 3 Md. Ch. 382; *Bellas* v. *McCarty,* 10 Watts, 13; *Neligh* v. *Michenor,*

3 Stockt. 539 ; *Wilder* v. *Brooks,* 10 Minn. 50) ; although the contrary has been held in some cases, and in others, judges have, by their language, seemed to assume, that the recording acts only apply to conveyances of the legal estate. (*Doswell* v. *Buchanan's Ex'rs,* 3 Leigh, 365 ; *Lewis* v. *Baird,* 3 McLean, 56 ; *Grimstone* v. *Carter,* 3 Pai. 421.) .

The recording acts, however, do not declare what effect shall be given to the recording of conveyances, upon the point of notice.    They declare that unless recorded, they shall be void as against subsequent purchasers in good faith, and for value, whose conveyances shall be first recorded.    But the courts, by construction, make the record of a conveyance, notice to subsequent purchasers ; but this doctrine is subject to the limitation, that it is notice only, to those claiming under the same grantor, or through one who is the common source of title. (*La Neve* v. *La Neve,* 2 L. C. in Eq. 208, note ; *Murray* v. *Ballou,* 1 Johns. Ch. 565 ; *Stuyvesant* v. *Hall,* 2 Barb. Ch. 151 ; *Raynor* v. *Wilson,* 6 Hill, 469 ; *Cook* v. *Travis,* 20 N. Y. 400 ; *Lightner* v. *Mooney,* 10 Watts, 407 ; *Leiby* v. *Wolf,* 10 Ohio, 83 ; *Bates* v. *Norcross,* 14 Pick. 224 ; *Whittington* v. *Wright,* 9 Ga. 23 ; *Fenno* v. *Sayre,* 3 Ala. (N. S.) 458 ; *Losey* v. *Simpson,* 3 Stockt. 246.)    I think the rule as to notice from the registry of conveyances, so far as relates to the question before us, is, that the registry of a conveyance of an equitable title, is notice to a subsequent purchaser of the same interest or title, from the same grantor, but that it is not notice to a purchaser of the legal title, from a person who appears by the record to be the real owner.    It follows, that the recording of the plaintiff's mortgage, was not notice to the "West, Bradley & Cary Manufacturing Company" when it took its conveyance from West.    West had the legal title of record. The mortgagor had no record title.    The registry of the mortgage, would have been notice to a subsequent purchaser, or mortgagee, of Bradley's interest by conveyance directly from him, but was not notice to a purchaser of the West title, with which, so far as appeared by the record, Bradley had no connection. Nor was the filing of the mortgage as a chattel mortgage,

notice of its existence. The unliquidated interest of Bradley in the assets of the firm, did not make him the owner of specific goods and chattels, of the firm, so as to make the filing of a mortgage thereof, notice. In *Bentley* v. *Bates*, (4 Young & Coll. 190), Baron ABINGER said: "If you look to the constitution of a mercantile partnership, what is the meaning of a partner mortgaging his share? Nothing more than that he covenants to pay the amount borrowed. The mortgage is nothing more than a personal covenant; it conveys no interest in the partnership effects." We conclude, therefore, that neither the recording, nor filing, of the plaintiff's mortgage, was notice to the corporation defendant.

But it is insisted that the "West, Bradley & Cary Manufacturing Company," had notice of the plaintiff's mortgage, when it purchased and took the conveyance of the land and other partnership assets, by reason of the fact, that Bradley, when the purchase and transfer was made, was a director of the company, and as such took part in the transaction. It is claimed, that the general principle applies, that notice to the agent is notice to the principal, and that as Bradley knew of the mortgage, his knowledge is imputed to the company.

Without considering whether, under the circumstances of this case, the company is chargeable with Bradley's knowledge of the mortgage; but, assuming that it was, we are, nevertheless, of opinion, that mere notice to a purchaser from a firm, of partnership assets, that one of the partners had mortgaged his interest, does not affect the purchaser's title, but that he takes it, free from the mortgage, provided the purchase was made in good faith, either during the existence of the partnership, or in the process of winding up, and that payment to the firm, or to the individual members, of their separate share of the purchase-price, in money, stock, or property, is a good payment in discharge of the purchaser; or (if this should be deemed too broad a proposition), that under the circumstances of this case, notice of the Bradley mortgage, did not invalidate the transaction, or create any equity against the defendants, or against the firm assets, transferred to the corporation.

We need not determine what the plaintiff's rights would have been, if he had intervened, and prohibited the sale of the property except for cash, or had demanded that Bradley's share of the proceeds, should be paid to him. The plaintiff, in fact, never took any legal proceedings to enforce his claim against Bradley; never gave any notice to the other members of the firm of the Bradley mortgage, and never, in any way, attempted to interfere with Bradley's exercise of his powers as partner, and did not bring his suit to foreclose his mortgage, until nine years after the conveyance to the defendant corporation, and after the stock had been issued to Bradley, for his interest. In the meantime Bradley has become insolvent, and has sold, and transferred his stock, which is now an outstanding liability in favor of the several transferees, against the company. The dissolution of the firm of West, Bradley & Cary, which occurred after the mortgage was given, did not destroy the *quasi* joint tenancy of the partners in the firm assets, or create a tenancy in common. The partnership, with its incidents, continued for the purpose of winding up. (*Murray* v. *Mumford*, 6 Cow. 441; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366.) In general, on dissolution, each partner has a right to insist on a sale of the partnership property, as the proper mode of ascertaining its value. (Lindley on Part. 102; Story on Part., § 207.) It must, I think, be a clear proposition, that the firm could have sold the firm assets to the company for cash, for the purposes of conversion, and conveyed a title free from the mortgage, although the purchaser had notice. The firm could also have received payment. In fact, however, the scheme of the conversion was, to organize a corporation to take the property, issuing to each partner (except Henderson, the special partner, whose interest was paid in money) stock, in proportion to his interest in the assets. It is quite obvious, in view of the character and condition of the property, that this may have been the most advantageous method of realizing its value. By the transfer to the corporation, the plaintiff was not deprived of his equity. His lien attached to the stock issued to Bradley, whose share in the partnership assets was by that act, for the first time

severed, and separated, from that of the other partners. This lien, the plaintiff could doubtless have enforced while the stock was in Bradley's hands. But the sale, was an execution of the legitimate rights of the firm as such, and we are of opinion that neither the other partners, nor the purchaser, was bound to see to the application of the stock, or to take affirmative measures to protect the plaintiff's lien.

If necessary, it might reasonably be held, in view of the fact that the plaintiff, when he took his mortgage, knew that the property was firm assets, and kept entire silence for nine years, although he must have known that the property was subject to disposition by the firm, that Bradley was his agent in dealing with the partnership assets. (See *Kelly* v. *Hutton*, L. R., 3 Ch. App. 704; *McCreight* v. *Foster*, 5 id. 604; *Crabtree* v. *Poole*, L. R., 12 Eq. Cas. 13; 1 Lindley on Part. 718.)

But we think that the sale to the corporation was an act within the scope of the powers of the firm in liquidation; that the defendant corporation, acquired a good title free from the lien of the plaintiff's mortgage; that it violated no legal or equitable right of the plaintiff in issuing to Bradley stock to represent his interest, although it had notice of the mortgage; and, consequently, that this action cannot be maintained.

The judgment should, therefore, be affirmed.

All concur, except FOLGER, Ch. J., absent at argument; and RAPALLO, J., taking no part; DANFORTH J., concurring in result.

Judgment affirmed.