Tefft *v.* Munson.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller,*
*P. Potter* and *Parker*, Justices.]

—•••—

ASA C. TEFFT *vs.* ASA MUNSON and WILLIAM RANDLES,
Commissioners for loaning certain moneys of the United
States for the county of Washington.

Where a. grantor with warranty has no title to the premises conveyed, at the
date of the conveyance, but he subsequently acquires an estate therein, such
acquired estate will enure to the benefit of the grantee; if not by estoppel,
it will upon the principle of avoiding circuity of action.

On the 18th day of January, 1848, G. P., being the owner in fee of certain
lands, let his son, M. B. P., into the possession thereof. On the same day,
M. B. P. forged a deed of said lands, purporting to convey the title from
G. P. to him, and recorded such deed in the clerk's office, May 27, 1850. On
the 1st of October, 1850, he executed a mortgage of said lands to the loan
commissioners, for $1000, money then loaned to him by them ; which mort-
gage was in the usual form, and contained a covenant of seisin and war-
ranty. Such mortgage was, at the time it was executed, duly entered upon
the books of the loan commissioners, kept and provided for that purpose, as
required by law. On the 23d of January, 1860, a deed of said lands, bear-
ing date April 1, 1853, was recorded in the county clerk's office, which
deed purported to be executed by M. B. P. and wife to G. P. On the 16th
of December, 1859, G. P. conveyed said lands to M. B. P. by warranty deed,
which was duly recorded January 14, 1860. And on the 31st day of Jan-
uary, 1867, M. B. P. sold and conveyed the land, by warranty deed of that
date, to the plaintiff, who paid full value therefor, without actual notice of
the loan office mortgage. A statute foreclosure of said mortgage being

Tefft *v.* Munson.

commenced, on the 28th of October, 1868, this action was brought to restrain such foreclosure, and to have the mortgage decreed void as against the plaintiff.

*Held*, 1. That the mortgage in question was an instrument within the recording acts.

2. That although the mortgagor, at the date of the mortgage, had no title to the premises, yet he having, while in possession of them, and while his covenant of warranty was in full force, become vested with the title in fee, such title enured to the benefit of the mortgagees; and the mortgagor, and those claiming title from him subsequent to the mortgage, were estopped by such covenant of warranty.

3. That as between the mortgagor and the mortgagees, the interest of the latter, in the lands, became, upon the mortgagor's subsequently acquiring title, as perfect as if the mortgage had been executed by M. B. P. after the date of his title. And that the mortgagees did not lose such interest by the mortgagor's conveyance to the plaintiff.

4. That the recording acts were also controlling in favor of the defendants, the mortgagees.

A mere grant operates upon the possession; it simply conveys the estate and interest which the grantor had, in the premises granted. If the grantor had no estate, there is no estate to be accepted; so that on the conveyance by grant only, of lands, by deed or mortgage, the grantee is not estopped from averring that his grantor had nothing in the lands granted.

But where the conveyance is by warranty, the rule is different. In that case, the warranty will rebut and bar the grantor, and his heirs, of a future right; not because a title ever passes by such a grant; but the principle of avoiding circuity of action interposes and prevents the grantor from impeaching a title to the soundness of which he must answer, on his warranty.

The cases of *The Farmers' Loan and Trust Co.* v. *Maltby*, (8 *Paige*, 361,) and *Doyle* v. *The Peerless Petroleum Co.*, (44 *Barb.* 239,) commented on, and distinguished from the present.

THIS action was brought to restain the foreclosure of a mortgage executed by Martin B. Perkins and his wife, on the 1st day of October, 1850, to secure the loan of $1000 that day made by the then loan commissioners to said Martin, and to have the judgment of the court that said mortgage is not a lien upon said premises against the grantees and assigns of Martin B. Perkins, the mortgagor.

The action was commenced January 23, 1869, in Washington county, and tried before Justice BOCKES, at a special term, on a conceded state of facts, which facts were as

follows: On the 18th day of January, 1848, one Gamaliel Perkins purchased of Cortland Howland certain lands in the town of Fort Edward, in said county of Washington, and took a conveyance thereof to himself, with covenant of warranty, and let his son, Martin B. Perkins, into the possession thereof. Said deed was duly recorded March 7, 1848. On the 18th day of January, 1848, and while said Gamaliel Perkins had title to said lands, said Martin B. Perkins, being then in possession thereof, forged a deed of said lands, purporting to convey the title from said Gamaliel Perkins to said Martin B. Perkins, and recorded said deed in the clerk's office of Washington county, May 27, 1850. On the 1st day of October, 1850, while the title to said lands was still in Gamaliel Perkins, said Martin B. Perkins (being then in the possession thereof) executed a mortgage of said lands to the loan commissioners of Washington county, for $1000, for money then loaned him by said loan commissioners, which mortgage was in the usual form, and contained the following covenant: "And at the time of sealing and delivering of these presents, the said Martin B. Perkins, and Emily his wife, are lawfully seised of the above bargained premises, of a good, sure, perfect, absolute and indefeasible estate of inheritance, and the same now are free and clear of and from all former and other gifts, grants, bargains, sales, liens, judgments, recognizances, dowers, rights of dower and other incumbrances whatsoever; and also, that the above bargained premises, upon the sale thereof pursuant to the directions of the said act, will yield the principal and interest aforesaid remaining unpaid at the time of such sale, and until the first Tuesday of October next after such sale, together with the charges of such sale."

Annual interest was paid and indorsed upon said mortgage, regularly, up to and including October, 1866, and one payment of $70 and interest was made and indorsed thereon, January 16, 1868.

The mortgage, at the time it was executed, was duly entered, as at the date thereof, upon the said loan commissioners' books, kept and provided for that purpose, as required by the statute of 1837, and the amendments thereto, and the said books were duly deposited and kept in the office of the clerk of Washington county, and properly indexed as required by law. On the 23d day of January, 1860, a deed of said lands, bearing date April 1, 1853, was recorded in the county clerk's office, which deed purported to be executed by Martin B. Perkins and wife to Gamaliel Perkins. On the 16th day of December, 1859, Gamaliel Perkins conveyed said lands to Martin B. Perkins, by warranty deed, which deed was duly recorded January 14, 1860. Gamaliel Perkins held the title to said lands continuously, from the 18th day of January, 1848, to the 16th day of December, 1859, and he had no knowledge of the existence of the mortgage, or of any of the deeds to or from Martin B. Perkins, except the deed of December 16, 1859, and Martin B. Perkins had no title to said land until said 16th day of December, 1859. On the 31st day of January, 1867, Martin B. Perkins, who still remained in possession of said lands, sold and conveyed the same, by deed of warranty of that date, to the plaintiff, who paid full value therefor, and went into possession of the same, without having any actual notice or suspicion of the existence of said mortgage, or any notice of the same whatever, except such constructive notice as the law may have compelled him to take (if any) by reason of the recording thereof, as aforesaid; and the plaintiff has ever since remained in possession of said premises. Said deed to the plaintiff was duly recorded February 9, 1867. Whatever interest was paid on said mortgage, at any time, with the knowledge or assent of the plaintiff, was paid under protest of the plaintiff, and under an arrangement made by him with said loan commissioners, to the effect that the plaintiff should have time to investigate the mat-

Tefft *v.* Munson.

ter, and decide upon the course to be pursued by him, and that any payment of interest so made should not affect the plaintiff's rights, or operate to his prejudice.

On the 28th day of October, 1868, the loan commissioners of Washington county commenced a statute foreclosure of said mortgage by advertisement, and this action was brought to restrain said foreclosure, and to have said mortgage decreed void as against the plaintiff.

The court, after hearing the matter, dismissed the complaint, with costs, and awarded judgment accordingly. And the judge found the following conclusions of law :

1st. That by reason of the conveyance of the lands and premises to Martin B. Perkins, and of the covenants contained in the mortgage executed by him to the loan commissioners, such mortgage became operative as a mortgage upon said lands and premises, notwithstanding its execution prior to the time when he acquired title to the mortgaged property.

2d. That the plaintiff occupies no better position, as regards the mortgage or lien thereof upon the mortgaged property, than did his grantor, Martin B. Perkins.

3d. That the plaintiff is not entitled to the relief demanded in the complaint.

To each of these conclusions the plaintiff duly excepted. From the judgment entered upon these findings and conclusions, the plaintiff appealed to this court.

*Boies & Thomas,* for the plaintiff.

*Potter, Tanner & Potter,* for the defendants.

*By the Court,* P. POTTER, J. By the act of 1837, under which the mortgage in question was given, the books of the loan commissioners, kept in the clerks' offices, containing the entry of such mortgages, are made of the same effect, as to priority of liens, and as to their operation and

effect, as if such mortgages had been duly recorded in the book of mortgages in the office of the county clerk of the county in which such mortgaged premises are situate.

By the recording act, (1 *R. S.* 756, § 1,) " every convey-ance of real estate is required to be recorded in the office of the clerk of the county where such real estate shall be situated ; and by the 38th section of the same act, the term 'conveyance' embraces every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity.

In various cases, found in the books, it has been held that the registry, and the recording, of a mortgage, under the provisions of the statutes making it a duty so to re-gister or record them, is notice to all subsequent purchasers and mortgagees, of the lien created thereby. (*Frost* v. *Beekman*, 1 *John. Ch.* 298. *Parkist* v. *Alexander*, *Id.* 398, 399. *Johnson* v. *Stagg*, 2 *John.* 510. *Brinckerhof* v. *Lan-sing*, 4 *John. Ch.* 69. *Williams* v. *Birbeck*, 1 *Hoffman's Ch. R.* 369, *&c.*)

I think the case before us must be controlled by the effect of the covenants in the mortgage given to the de-fendants, and of the recording acts in this state. 1. The *conveyance* by mortgage to the defendants was with war-ranty, and covenant "that Martin B. Perkins and his wife were lawfully seised of the premises of a good, sure, per-fect, absolute and indefeasible estate of inheritance, and that the same were free and clear of, and from, all former and other gifts, grants, bargains, sales, liens, judgments, recognizances, dower, rights of dower and other incum-brances whatsoever." Then the conceded rule of law is, that where a grantor, even has no title to the premises so conveyed with warranty, if he subsequently acquires an estate therein; such acquired estate will enure to the bene-fit of the grantee ; if not by estoppel, it will upon the prin-ciple of avoiding circuity of action. Such a case is dis-

tinguished from the ancient conveyance by feoffment with livery of seisin, now fallen into disuse in England, and not applicable here, under our system; so too it is distinguished from mere grants, by deeds poll and quit-claim. A mere grant operates upon the possession; it simply conveys the estate and interest which the grantor had in the premises granted. If the grantor had no estate, it is obvious that there was no estate to be accepted; so that in the conveyance by grant only of lands, by deed or mortgage, the grantee is not estopped to aver that his grantor had nothing in the lands granted. (*Sparrow* v. *Kingman*, 1 *N. Y.* 252, &c.) But the rule is different where the conveyance is by warranty. As was said by Marcy, J., in *Jackson* v. *Bradford*, (4 *Wend.* 622,) "the warranty will rebut and bar the grantor and his heirs of a future right. This is not because a title ever passes by such a grant, but the principle of avoiding circuity of action interposes and stops the grantor from impeaching a title to the soundness of which he must answer, on his warranty." (*Co. Litt.* 265, *a.* 14 *John.* 194. *Averill* v. *Wilson*, 4 *Barb.* 187.) This warranty in the mortgage clearly estopped the grantor, Martin B. Perkins; and if the grantor or any one ʼning title from him, subsequent to such grant, seeks to recover the premises by virtue of such after-acquired title, the original grantee, or his heirs or assigns, by virtue of the warranty, may plead such warranty by way of rebutter or estoppel, as a bar to the claim. (*Bank of Utica* v. *Mersereau*, 3 *Barb. Ch.* 567, 568.) Chancellor Walworth in that case said: "This principle has been applied to all suits brought by persons bound by the warranty, or estoppel, against the grantee or his heirs and assigns, so as to give the grantee and those claiming under him the same right to the premises, as if the subsequently acquired title or interest therein had been actually vested in the grantor at the time of the original conveyance from him with warranty, where the covenant of warranty was in full

force at the time when such subsequent title was acquired by the grantor." And where an estoppel runs with the land, it operates upon the title so as actually to alter the interest in it in the hands of the heirs or assigns of the person bound by the estoppel, as well as in the hands of such person himself. (*Brown* v. *McCormick*, 6 *Watts*, 64. *Comstock* v, *Smith*, 13 *Pick*. 119.)

This principle seems to be founded in equity and justice, as well as in the policy of the law, and applies equally to a case of covenants of warranty in a mortgage, as to those in a deed absolute. This was so held in *Vanderheyden* v. *Crandall*, (2 *Denio*, 25; *and see cases there cited.*)

In this view of the case, the question is simple. The mortgage in question is an instrument within the recording acts. Although Martin B. Perkins, at the date of its execution, had no title to the premises, yet while he was in possession of them, and while his covenant of warranty was in full force, he became vested with the title in fee. This title enured to the benefit of the defendants by virtue of the warranty, by well established principles of common law. As between Martin B. Perkins and the defendants, this interest in the latter, in the lands, became as perfect as if the mortgage had been executed by Perkins after the date of his title. Did the defendants lose this interest, by Perkins' conveyance to the plaintiffs? I think not. The case of *The Bank of Utica* v. *Mersereau* (*supra*) decides this question. The cases that are cited, and claimed to be in conflict with this principle, are cases of mortgages, or of simple grants without covenants of warranty, or cases where the question of the effect of the covenant of warranty did not arise. Such are the cases of *Doyle* v. *The Peerless Petroleum Co.*, (44 *Barb*. 239,) and *The Farmers' Loan and Trust Co.* v. *Maltby*, (8 *Paige*, 361.) This last case is greatly relied upon by the plaintiff.

It is easily distinguished from the case before us, for other reasons. In that case, before the execution of the

Tefft *v.* Munson.

mortgage, (which is not shown to have contained covenants of warranty,) the mortgagor had sold the property by executory contracts, and the vendees were in the possession under their agreements at the time of execution of the mortgage, and had made payments thereon, thus having an equitable interest in the estate. Their grantor at the time of making the agreements not having the legal title, but having himself an equitable title under a contract to purchase, from the true owner, which he afterwards consummated by taking a deed, was the owner of an interest which he could alienate. The only question considered by the chancellor, in that case, was, whether the defendants should lose the payments they had made before they had notice of the plaintiff's mortgage. What the chancellor said in the case beyond that was *obiter*, and not an adjudication. That case has no application to the main question before us in this case upon its merits.

I am also inclined to think that the recording acts are controlling in favor of the defendant in this case, and that the judgment should be affirmed.

Judgment affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller, P. Potter* and *Parker*, Justices.]