Thomas W. Edwards v. John Q. McKernan, Emma S. McKernan and Peter Ruppe.

*Foreclosure by prior against subsequent mortgagee.*

Partners holding an executory land contract mortgaged each his undivided interest to secure an antecedent debt. A portion only of the land was afterwards conveyed to them, and they released the rest and mortgaged their new interests to another person. The later mortgagee foreclosed and bid in the land under his decree, after which the earlier mortgagee sued and recovered on the debt to himself, and levied on the same land which he bought at the execution sale. He then sought to foreclose against the later mortgagee. *Held* by an equally divided court, affirming the decree below, that his bill would lie.

Appeal from Baraga. (Williams, J.) Oct. 8.—Jan. 14.

Foreclosure bill. Defendant Ruppe appeals. Affirmed.

*T. L. Chadbourne, Alexis A. Angell* and *Ashley Pond* for complainant.

*Chandler & Grant* for defendant Ruppe.

Champlin, J. The bill in this cause was filed to foreclose a mortgage executed by defendants John Q. and Emma S. McKernan to complainant on the 5th day of March, 1875. In addition to the statements usually found in such bills, it sets forth that about May 14, 1873, John Q. McKernan and one Henry Steinbach purchased from Samuel L. Smith lots numbered 5 to 18 inclusive, in block 19 according to the recorded plat of the village of L'Anse, and that a written agreement for the purchase and sale was entered into, and that $400 of the purchase money was paid down, and the purchasers took and remained in possession until about March 8, 1878, on which day Smith and wife conveyed by warranty to McKernan and Steinbach lots 12, 13, 14 and 15, of block 19 aforesaid, being four of the same lots covered by complainant's mortgage; that in consideration of this deed McKer-

nan and Steinbach released, discharged and surrendered to Smith the balance of the lots covered by the contract; that McKernan and Steinbach, at the time of the execution of the deed and release of the contract, had failed to perform the conditions of the agreement, and had ceased to have any interest in the lands so released and discharged, legal or equitable, and from that time forward complainant's mortgage applied to the lots included in the deed, and to no others; that the deed was made and delivered by Smith to McKernan and Steinbach pursuant to and as fulfillment of said written agreement; and that his said mortgage, when given, covered said McKernan's equitable title to the lots mentioned in said written agreement, and on and after the delivery of said deed covered the legal title of said McKernan in and to the lots in said deeds mentioned.

To this bill the defendant Ruppe filed a joint plea and answer, setting forth that on the 29th day of March, 1880, he exhibited his bill of complaint in the same court against the complainant and John Q. and Emma S. McKernan for the foreclosure of a mortgage by defendants John Q. and Emma S. McKernan to him (Ruppe) on the same lands described in complainant's bill, which was taken as confessed by the McKernans, and that Edwards appeared and answered, upon which issue was formed, and that such proceedings were thereafter had in said suit that on the 5th day of September, 1881, a decree was rendered in favor of Ruppe and against Edwards and the McKernans, and under such decree said premises were sold at public auction, and upon such sale the said premises were bid in by Ruppe; that the sale was ratified and confirmed by the court; "all which said several matters and things this defendant doth aver and pleads the said former bill, answer and decree, and the said several proceedings in the said former suit, in bar to the said complainant's present bill." He sets forth in answer to complainant's bill, on information and belief, that at the time when it is alleged in the complainant's bill that said John Q. and Emma S. McKernan executed and delivered to him said mortgage, said John Q. McKernan had no title to said lands, and no inter-

est therein which was capable of being mortgaged by him-
self and his wife; that on the 9th day of January, 1879, com-
plainant, as plaintiff, brought suit in the circuit court for the
county of Baraga against said John Q. McKernan and one
Henry Steinbach, who was the owner of all the interests in
said lands not then owned by John Q. McKernan; that such
proceedings were thereafter had in such suit that said com-
plainant, on the 26th of February, 1879, recovered judg-
ment against McKernan and Steinbach, and afterwards, by
virtue of an execution issued in said suit, the sheriff of said
county levied upon and sold the same, and the said lands
were bid in by the complainant on such sale, and in due
course of law a deed was executed to complainant, and duly
recorded in the office of the register of deeds of said county;
that said deed was afterwards by this Court declared to be
subject to the title of this defendant; and this defendant
insists that said suit at law is a waiver of complainant's
mortgage, and that said mortgage was, by reason of said
deed, rendered null and void.

Such was the issue made by the pleadings between these
parties. The mortgage to Edwards was duly recorded on
March 17, 1875. It was given as security for a precedent
debt, but there is nothing in the printed record before us to
show what, if any, time was given for the payment of the
indebtedness when the mortgage security was given. The
testimony is that a note was made for the amount then owing,
but when it became due is not stated, and the note is admitted
to have been lost. It appears that March 22, 1878, Samuel
L. Smith and his wife conveyed the lots in dispute to Mc-
Kernan and Steinbach, and it is stipulated in this record
that they then owned the four lots conveyed as tenants in
common. Prior to the 22d day of March, 1878, defendant
McKernan was indebted to defendant Ruppe, and Ruppe
was desirous of obtaining security therefor; and in order to
secure the payment of such indebtedness he took from Mc-
Kernan and wife a mortgage on McKernan's undivided half
interest in the lots; and also from Steinbach a separate mort-
gage upon his undivided half interest in the same lots.

Whether this indebtedness to Ruppe was the individual debt of McKernan or the joint debt of McKernan and Steinbach, does not satisfactorily appear from this record; but, whether several or joint, the two mortgages were given to secure to defendant Ruppe the payment of the same debt. The same uncertainty with respect to the time or terms of these mortgages exists in the printed record before us, as observed in the case of the McKernan mortgage. The rule of this Court requires the whole return except the formal parts, in chancery cases, to be printed for the use of court and counsel, and if counsel see fit to so abridge the printed record as to leave [out] important data therefrom, which appear in the original record, this Court will either affirm the judgment or decree of the court below, or, as was said on a previous occasion in a case between these same parties, they must not complain if the court, in considering what is produced, does not find it as full and satisfactory as he supposed, or extend it by construction to meet a defense that might have been proven. *Ruppe v. Steinbach* 48 Mich. 466.

The controversy is therefore between two creditors of McKernan, striving to secure precedent debts. Neither advanced nor gave any new consideration for their mortgages. If Edwards' mortgage did not cover the legal title, neither did Ruppe occupy the position of a bona fide purchaser. *Boxheimer v. Gunn* 24 Mich. 372. He does not appear to have extended the time of credit, released any securities, or parted with anything of value.

The case of *Farmers' Loan & Trust Co. v. Maltby* 8 Paige Ch. 361, has been often cited as authority for the doctrine that the record of a mortgage upon an equitable interest in lands is not notice to a subsequent purchaser or encumbrancer, without actual notice from the holder of the legal title. In that case Maltby had purchased certain real estate by contract from Squires, which consisted of four lots in the city of Buffalo. He then sold by contract lot 1 to Buchanan, lot 2 to Linhart, and lot 3 to Hodge, who went into possession under their contracts of purchase. While they were thus in possession, Maltby executed the mortgage to complain-

ant, which complainant placed upon record. Now, it is evident from this statement of the position of the parties, that the possession of these contract purchasers from Maltby was notice to complainants of their rights, and that the complainant could only reach in equity the unpaid pur chase money due from them to Maltby, if any remained. In adjusting the equities between the parties it was wholly immaterial whether Maltby held the title or not. The purchasers from Maltby were prior in point of time to the mortgage to complainant, and being in possession complainant took his mortgage subject to their rights. Maltby's contract of purchase from Squires was not assigned to complainants. His interests under it were simply mortgaged. Neither were the contracts given by Maltby to the purchasers from him assigned to complainants. These purchasers, therefore, had the right to make payments to Maltby upon their contracts of purchase, even though they had received actual notice of the complainant's mortgage. Constructive notice by recording the mortgage no more affected their rights than actual notice would have done. Complainant was not a subsequent purchaser or encumbrancer, who are the only class of persons protected by the registry laws. The only way open for complainant to reach the moneys owing to Maltby, was to arrest its payment in equity and obtain a decree to apply it to the payment of his mortgage debt. And this is what the chancellor held he might do, and all that he did do. What was said about the record of the mortgage not being constructive notice, must, I apprehend, be taken in its relation to the facts of that case, and not that the record of a mortgage of an equitable interest is in no case constructive notice to subsequent purchasers or encumbrancers. In *Tefft v. Munson* 63 Barb. 31, the court, in referring to this case, says that what was said about the record of the mortgage being notice was obiter. It is the prevailing doc. trine now that conveyances of equitable interests in land are within the recording acts. *Parkist v. Alexander* 1 Johns. Ch. 394 ; *Johnson v. Stagg* 2 Johns. 510 ; *Hunt v. Johnson* 19 N. Y. 281 ; *Stoddard v. Whiting* 46 N. Y. 627 ; *United*

*States Ins. Co. v. Shriver* 3 Md. Ch. 381; *Wendell v. Wadsworth* 20 Johns. 663; *Jackson v. Dubois* 4 Johns. 216; *Tarbell v. West* 86 N. Y. 280; *Shaw v. Poor* 6 Pick. 86; *Wilder v. Brooks* 10 Minn. 50; *Digman v. McCollum* 47 Mo. 372; *General Ins. Co. v. United States Ins. Co.* 10 Md. 524; *Hays v. Richardson* 1 Gill. & J. 384; *Thomas v. Kennedy* 24 Iowa 397, 407; *Bellas v. M'Carty* 10 Watts 13; *Neligh v. Michenor* 3 Stockt. 539.

A brief reference to the statute relating to the subject of recording conveyances will show very clearly that such mortgages are within the provisions made for recording conveyances. How. Stat. § 5674 enacts that every register of deeds shall keep an entry-book of deeds and an entry-book of mortgages. The next section provides that in the entry-book of mortgages he shall enter all mortgages and other deeds intended as securities, and § 5676 requires the register to record in the books provided for that purpose all mortgages at full length. Section 5683 enacts that "Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded." Section 5688 enacts that "The term 'purchaser,' as used in this chapter, shall be construed to embrace every person to whom any estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage, or lease, or other conditional estate." Section 5689 defines the term "conveyance" as used in that chapter, and says that it shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands.

It was held in *Burns v. Berry* 42 Mich. 179, that the protection which this statute (§ 5683) gives to a bona fide

purchaser does not proceed upon the theory, and is not made to depend upon the fact, that the grantor at the time of such conveyance had any interest in the premises whatever, or that any passed from him by his conveyance to such subsequent purchaser; that it is not by force of the conveyance but by the terms of the statute, that such subsequent purchaser acquires title to the premises. So that in this case it is no objection to the record of the mortgage as constructive notice that McKernan did not hold the legal title at the time he executed the mortgage to Edwards. The mortgage was a conveyance by which the title to real estate might be affected in equity, and therefore directly within the protection of the recording laws. In every case of two or more mortgages upon the same land, all except the first must of necessity be merely of the equitable estate of the mortgagor; yet no doubt ever existed that such mortgages of equitable interests were entitled to be recorded, and that such record operated as notice to subsequent purchasers of the legal estate. The statute does not declare that the record shall be notice to subsequent purchasers, but only that unrecorded conveyances shall be void as to subsequent purchasers in good faith whose conveyances shall be first recorded; and courts have held uniformly that the effect of the recording laws was that the record of a conveyance, which is entitled to be recorded under such laws, operates as constructive notice to subsequent purchasers claiming under the same grantor, or through one who is the common source of title. *Losey v. Simpson* 3 Stockt. 246; *Murray v. Ballou* 1 Johns. Ch. 566; *Raynor v. Wilson* 6 Hill 469; *Stuyvesant v. Hall* 2 Barb. Ch. 151; *Cook v. Travis* 20 N. Y. 400; *Lightner v. Mooney* 10 Watts 407; *Leiby v. Wolf* 10 Ohio 83; *Bates v. Norcross* 14 Pick. 224; *Fenno v. Sayre* 3 Ala. 458; *Whittington v. Wright* 9 Ga. 23; *Digman v. McCollum* 47 Mo. 372; *Parkist v. Alexander* 1 Johns. Ch. 394; *Thomas v. Kennedy* 24 Ia. 397; *Alderson v. Ames* 6 Md. 52; *Hetherington v. Clark* 30 Penn. St. 393; *Brock v. Headen* 13 Ala. 370; *Long v. Dollarhide* 24 Cal. 218; *St. John v. Conger* 40 Ill. 535; *Tilton v. Hunter* 24 Me. 29; *Tarbell v. West* 86 N. Y. 280.

In this case McKernan was the common grantor of Edwards and of Ruppe. It is claimed, however, that Ruppe was under no obligation to search the records in point of time anterior to the vesting of the legal title in his grantor, in order to ascertain whether his grantor had made conveyance prior to his acquisition of the legal title, and there are some authorities which hold to this doctrine. *Calder v. Chapman* 52 Penn. St. 359 ; *Doswell v. Buchanan* 3 Leigh 381. It seems to me that the doctrine of those authorities holds the purchaser to a very limited line of duty, and materially circumscribes the purposes and usefulness of the recording laws. It was the design of those laws that all rights, encumbrances or conveyances connected with or in anywise concerning land should appear upon the public records, for the protection of purchasers or encumbrancers, and should be construed so as to effect that end. Any conveyance which under those laws is entitled to be recorded, should be held to be constructive notice to all persons of the interest conveyed by any person in the chain of title from the government to the last purchaser. The law requires every register of deeds to keep an " entry-book of deeds " and an " entry-book of mortgages," and to enter therein the date of the reception of such conveyances, the names of the grantors and the grantees, and the township, range and section where the lands conveyed lie, and that he shall make such entries in the order in which such instruments were received ; and it declares that every such instrument shall be considered as recorded at the time so noted (How. Stat. §§ 5674, 5676), and it was held by this Court in *Sinclair v. Slawson* 44 Mich. 126, that a conveyance so entered was, in law, considered as recorded, for all purposes of notice and protection.

The law provides that every register of deeds shall also keep a proper general index to each set of books, in which he shall enter alphabetically the name of every party to each and every instrument recorded by him, with a reference to the book and page where the same is recorded. How. Stat. § 5682. The object of this provision is to afford facilities to the searcher after recorded conveyances through the names

of the grantors and grantees. The records therefore furnish ready means of information to purchasers investigating the title to land, and of the conveyances made by any person in the chain of title; and they cannot be held to be excused from making search for mortgages of equitable interests made by their grantors previous to obtaining the legal title, for the reason that it is a matter of common notoriety that such mortgages are frequently made, and are entitled to be recorded, and if recorded appear upon the entry-book and index to have been made by the person from whom they are about to purchase. The remarks of the court in *Digman v. McCollum* supra, are pertinent upon this subject. The court observes: "In dealing with equitable titles and interests in real property, is the purchaser bound at his peril to look into the state of his vendor's title as shown by the registry of deeds? I perceive no sufficient reason for making a distinction in this respect between legal and equitable estates. Under our system of registration, careful and prudent men, whether purchasing a legal or equitable interest in real property, search the records to ascertain the state of the vendor's title, and courts act upon the assumption that such searches are made." *Alderson v. Ames* 6 Md. 52, was a case which in its facts is quite parallel to the one under consideration, and the court held that the record of the mortgage was constructive notice to a subsequent mortgagee from the same grantor, after he had acquired the legal estate. I am of opinion that the record of the mortgage from McKernan to complainant operated as constructive notice to Ruppe, and that his mortgage must be held subject thereto.

The case of *Wing v. McDowell* Walk. Ch. 175, so far as the same conflicts with the views above expressed, must be considered as overruled. It may be remarked, however, that the statutes of 1838, under which that decision was made, aside from being quite unlike our present law in the language of the section upon which it is based, did not contain the substance of §§ 5688 and 5689 of the present Statutes, which I think materially affects the construction to be given to § 5683 above cited. I am also of opinion from this record that

Ruppe had actual notice of complainant's mortgage. This fact is in dispute, and the testimony respecting it is contradictory; but I think the decided weight of testimony tends to prove that defendant had actual notice. In arriving at this conclusion, I lay entirely out of view the testimony of the witness Chadbourne. His testimony was clearly incompetent. He was under a retainer as the attorney and counsel of Ruppe, and whatever communications Ruppe made to him were privileged. And it does not render them less so that he informed Ruppe at the time he was retained by him that he was under a prior retainer to Edwards. It was a breach of the privilege of his client Ruppe, for him to give testimony in this case against his client's objection, and such testimony must be stricken from the record. There remains as bearing upon this point the testimony of Thomas D. Meads, the register of deeds, who testifies positively to Mr. Ruppe's coming to his office and requesting him to search the records of Baraga county to ascertain if there was anything against McKernan's property; that he did so, and found the record of the mortgage from McKernan to. Edwards, and informed Ruppe of it. This was in the fall of 1877 or winter of 1878. The reasons he gives for remembering the conversation are quite satisfactory, and leave no doubt as to the fact and time of occurrence.

Mr. McKernan also testifies to a conversation he had with Mr. Ruppe in the fall of 1877 or winter of 1878. He says he owed Ruppe, and he wanted his money, and he (McKernan) told him he would like to pay him, and suggested to him that if he had a little means that he would try and buy pine land and go into the lumber business, and get out of it in that way; that Ruppe said to him : "You can't get money unless you give good security, and you can't give security because you have given a mortgage to Mr. Edwards on your land, unless you get the money through Mr. Edwards to buy pine lands." He also testifies to telling Mr. Chandler, who acted as the attorney of Mr. Ruppe in obtaining the mortgage to Ruppe, that he had already given a mortgage to Mr. Edwards and he didn't know how that would work, and Mr.

55 MICH.—34

Chandler told him that didn't make any difference, and he afterwards gave the mortgage.

Against this testimony stands the testimony of Mr. Ruppe, who denies the interview as stated by Mr. Mead,—also the conversation with McKernan, and also denies all knowledge or actual notice of the existence of the Edwards mortgage previous to the taking of his; but there is no contradiction of McKernan's statement concerning his notifying Mr. Chandler of the Edwards mortgage. It is sought, however, to discredit this statement by showing that the witness testified to this interview with Chandler in the suit brought by Ruppe against Steinbach and Edwards, and he then omitted to state that he had informed Chandler of the Edwards mortgage. In explanation he says that he only answered such questions as were asked him, and he was not asked respecting that portion of the interview. These witnesses were examined in open court, and the circuit judge had the opportunity of observing them and judging of their credibility ; and if we had any doubt as to the weight to be accorded to their evidence, the fact that the circuit judge took the same view of their testimony given orally in his presence as we do from the depositions, confirms us in the opinion we entertain of its reliability.

It appears that McKernan and Steinbach were partners in the brewing business, and as such partners had borrowed from Edwards about $1400, and on the 9th day of January, 1879, Edwards brought suit against the firm, obtained judgment, levied upon the lots in question, and sold them at sheriff's sale, and became the purchaser thereof on the 2d day of March, 1880, and afterwards went into possession, claiming under the sheriff's sale. While he was in possession, Ruppe filed two bills of complaint to foreclose the two mortgages taken by him, and made Edwards a party defendant. Edwards answered, setting up the judgment against the firm and sale thereunder, and also claiming that the land was partnership assets, and claiming that the mortgages to Ruppe were given to secure the individual debt of McKernan to Ruppe, and also that the partnership was insolvent, and that

his partnership debt existed prior to the Ruppe mortgage and his lien was therefore prior to the lien of the Ruppe mortgages. But this Court held in that case that Edwards had not by his proof satisfactorily established the fact that the lands were partnership property, and affirmed the decree below, which was in Ruppe's favor. *Ruppe v. Steinbach* 48 Mich. 466.

The existence or validity of the mortgage from McKernan to Edwards was not involved in that suit, and was unaffected by the decision of that case. *Wurcherer v. Hewitt* 10 Mich. 453; *Dawson v. Danbury Bank* 15 Mich. 489; *Shotwell v. Harrison* 22 Mich. 410, 426; *Summers v. Bromley* 28 Mich. 125. When the sales were made under the decrees rendered upon the Ruppe mortgages, Edwards became the purchaser of the undivided half mortgaged by Steinbach, and Ruppe of the undivided half mortgaged to him by McKernan, being the same undivided half in question in this suit. Complainant testified that he has never abandoned or released, or intended to abandon or release, his mortgage, and never intended to yield up the lien which it gave him upon this property. But defendant Ruppe claims that by purchasing the whole property at sheriff's sale the lien of his mortgage became merged in the legal title, and ceased to exist for all purposes whatever, and that his (Ruppe's) mortgage lien being prior to such execution lien, he holds the title under his purchase at the mortgage sale discharged of any lien thereon in favor of complainant.

We cannot accede to this view. It is true, as a general rule, that when the legal title becomes united with the equitable so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping the titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger. This is elementary doctrine. 1 Jones on Mortgages § 848, and notes. In this case Edwards had an interest in keeping the titles distinct, and there was also the mortgage to Ruppe intervening, which of itself was sufficient to pre-

vent a merger. We think the decree of the circuit court should be affirmed with costs.

COOLEY, C. J. concurs.

CAMPBELL, J. This bill was filed to foreclose a mortgage given in March, 1875, by McKernan and wife on an undivided half of 14 lots numbered from 5 to 18 in block 19 in the village of L'Anse, now in Baraga county, for which McKernan and Henry Steinbach held an unrecorded contract from S. L. Smith, on which there had been a part payment of $500. The mortgage in suit was given for $5179.54, being the balance as alleged of an old unsettled account due Edwards, and was very much beyond the value then or since of the lands mortgaged. It was put on record not long after its date.

On the 22d of March, 1878, with the assent, as the bill indicates, of complainant, the land contract for the 14 lots was given up and canceled, and Smith gave McKernan and Steinbach a warranty deed of lots 12, 13, 14 and 15, and each of them at the same time gave mortgages to Ruppe of their several undivided interests, which were duly recorded. The bill avers that McKernan and Steinbach failed to perform their executory contract and ceased to have any interest in the lands not conveyed, but claims that his own mortgage attached to the lots conveyed, and was superior to the Ruppe mortgage. It is not averred or shown that there was any agreement to this effect.

Edwards, afterwards, sued McKernan & Steinbach, as partners, for a partnership debt, and in March 1880 obtained a certificate on sheriff's sale, and afterwards got a deed, and has been in possession for some three years or thereabouts. In March 1880 Ruppe filed his bill making Edwards a party as a subsequent encumbrancer. Edwards answered and claimed priority of right over Ruppe on the ground that as a partnership creditor he was to be preferred to a mortgagee of one of the partners. But it was held in this Court in *Ruppe v. Steinbach* 48 Mich. 465, that by taking the warranty deed in the usual form of a tenancy in common, the

parties had authorized Ruppe to deal with the land in that shape. While setting out his title in that case Edwards made no reference to any other title or encumbrance, and the fore-closure was had and sale made as if none existed. As already stated, this mortgage, if valid, left no value whatever to be secured by the mortgage to Ruppe.

The question now is whether this early mortgage can be enforced against Ruppe.

The testimony does not, in my opinion, indicate that when Ruppe took his mortgage he knew that Edwards set up any such claim. Apart from other circumstances it is clear that no one at that time had any idea that such a mortgage, if existing, would leave anything worth mort-gaging. The circumstances indicate that the warranty deed from Smith, which all parties approved, and which Smith could not have given if Edwards was supposed to retain any rights against the contract, was part of one arrange-ment whereby Ruppe was to obtain his mortgages. Neither Ruppe nor any one else would have taken a mortgage which would be worthless when given. It is hardly credible that Edwards, seeing and approving the surrender of the contract and the conveyance of lands not in accordance with its terms, or with his mortgage rights on the ten lots surrendered, sup-posed or intended it to be kept in force, and it would have been a gross fraud to let Ruppe act upon a different belief, as he certainly must have done. If he had no notice actually, there was nothing to affect him constructively, as not only was Smith's contract unrecorded, but the statute does not make the record of interests under executory contracts eman-ating from private titles notice to subsequent purchasers under the legal title. If executory contracts are beyond the pro-tection of the recording laws I cannot conceive that a mort-gage of such a contract can stand on any better ground : still less a mortgage of a part interest.

The case of *Wing v. McDowell* Walk. Ch. 175, was based on recording laws which in this respect have not been sub-stantially changed ; and although the chancellor in that case seems to have obtained the idea that the rule in New York

was different, the case of *Farmers' L. & T. Co. v. Maltby*
8 Paige 361, which was subsequent to *Parkist v. Alexander*, cited by him, shows that as against holders under the
legal title the rule in that state does not differ from the rule
laid down by Chancellor Manning, which has never been
questioned by any later decision, and has, I think, always
been supposed to create a rule of property.

But upon all the facts of this case that question is not at all
controlling. As already stated the mortgage is an old mortgage and was allowed, if not, as may fairly be supposed, intended, to pass without any reference at the time when a large
part of the land covered by it was taken out of it by complainant's approval, but without any written evidence of it. It
has been allowed to outlaw, so far as the secured debt is concerned. Complainant subsequently paid a considerable sum
for the equity of redemption. He set up in Ruppe's suit a
claim entirely inconsistent with its validity, when, if he supposed it valid, it would have sufficed to render Ruppe's mortgage worthless. These facts taken together are not to be
harmonized with the idea that he considered it as in force
after the new arrangement with Smith.

But the failure to set it up in the foreclosure suit reaches
further. While it is well settled that a prior mortgagee is not
a necessary party to a foreclosure suit, yet it is not held that he
may not be made a party where there are other interests
claimed by him, or where there are questions otherwise rendering it desirable. When he undertakes to set up his title, to
show why he should not be affected by the foreclosure, there
is no' reason why he should not set it up fully. It is always
competent for a subsequent mortgagee to redeem, so as to
make complete title by his foreclosure, provided the prior
mortgage is due. And any purchaser on a foreclosure has a
right to assume that the title disclosed is the true one, although
in the absence of any answer the case may be otherwise. The
rule as generally agreed upon is that it is proper, but not
necessary, to bring in prior encumbrancers. Story's Eq. Pl.
§ 193, and notes; *Farmers' & Mech. Bank v. Bronson* 14
Mich. 361.

Upon the record we think no equities are shown in complainant, and his bill should have been dismissed, and the decree should be entered accordingly.

SHERWOOD, J. concurred.