### FISCHER v. LAUHOFF.

1. DEEDS—VALIDITY—EVIDENCE—SUFFICIENCY.

In a suit to remove a cloud upon plaintiffs' title to an undivided one-half interest in land, the conclusion of the court below that the deed conveying to plaintiffs an undivided one-half interest in the land in question was valid, *held*, supported by the evidence.

2. SAME — UNRECORDED DEED — NOTICE — POSSESSION—BONA FIDE PURCHASER.

Where plaintiffs' deed to an undivided one-half interest in land was not on record, their claim that their possession was such as to put a prospective purchaser of the land on inquiry, *held*, not supported by the evidence which shows that the house and buildings were unoccupied, and that there was nothing on or about the premises giving notice of their interest therein.

3. SAME—NOTICE—BONA FIDE PURCHASER.

Knowledge by the prospective buyer of land that plaintiffs were in the chain of title, and that after they had apparently parted with their interest they joined in four mortgages as mortgagors, *held*, sufficient to put it upon inquiry, and where it purchased without making inquiry of plaintiffs as to their interest after such notice it cannot be said to be a *bona fide* purchaser.

4. ACCOUNTING—SETTLEMENT.

Where it appears that plaintiffs and defendants had a settlement on a certain date, and at that time plaintiffs were discharged from all indebtedness to defendants in consideration of an undivided half interest in land conveyed by plaintiffs to defendants, the decree of the court below for an accounting between them should be modified to limit the same to transactions between them subsequent to the date of said settlement.

Appeal from Macomb; Law (Eugene F.), J., presiding. Submitted October 20, 1922. (Docket No. 38.) Decided March 22, 1923.

On notice of title of possession by mortgagee, see note in 13 L. R. A. (N. S.) 120.

Bill by Alexander T. Fischer and another against Anthony C. W. Lauhoff and others to remove a cloud upon the title to land.   Defendants filed cross-bills asking affirmative relief.   From the decree rendered, all parties appeal.   Modified and affirmed.

*Charles H. Hatch* (*Lungerhausen, Weeks & Lungerhausen,* of counsel), for plaintiffs.

*Donnelly, Hally, Donnelly & Munro,* for defendants.

McDONALD, J.   In October, 1898, the plaintiffs, Alexander T. Fischer and Mary Fischer, his wife, became the owners of a farm consisting of about 329 acres on the Gratiot road in the county of Wayne. In May, 1907, they mortgaged it to the Northwestern Mutual Life Insurance Company to secure a loan of $17,000.   Afterwards, Mr. Charles E. Greening obtained a lien on it for a debt of $17,000.   There were still other liens against it when the insurance company foreclosed its mortgage and Greening bid it in for $41,980.   The defendants Anthony C. W. Lauhoff and Anna Lauhoff, his wife, advanced $25,000 to Mr. Fischer to assist him in redeeming it.   A further loan of $16,000 was obtained from a savings bank in Mt. Clemens secured by a mortgage on the farm, exclusive of 20 acres which had previously been mortgaged to a Mrs. Brown.   With the money secured from the Lauhoffs and the bank, and with other money provided by Mr. Fischer himself, the plaintiffs were able to pay to Mr. Greening the sum of $42,873.86, and a conveyance of the farm was made by him to Mr. and Mrs. Lauhoff on the 25th day of February, 1910.   Previous to this time the Fischers and the Lauhoffs had had a long course of dealings in which Fischer had become indebted to them in a large amount for loans.   On the 16th of November, 1909, they had a settlement, in which it was de-

termined that the total amount of Fischer's indebtedness was $27,365.01. It was then agreed between them that Mr. and Mrs. Lauhoff should make an additional loan of $10,000, which would make Fischer's indebtedness to them $37,365.01. In anticipation of this additional loan, which, however, Mr. Fischer never received, he executed a note to Mr. and Mrs. Lauhoff for $37,365.01, and gave them a mortgage on the farm as security for its payment. As the Lauhoffs were unable to make the additional loan of $10,000, it was decided that the note and mortgage should be surrendered. The mortgage had not been recorded and could not be found at this time, but the note was returned to Mr. Fischer. A new note was then given by Fischer for $29,878.89, which was secured by a mortgage on the farm, except the 20 acres which had been previously mortgaged to Mrs. Brown. This note and mortgage were dated back to November 16, 1909, which was the date of the settlement. When Fischer first applied to the Lauhoffs for assistance in redeeming the farm, he gave them a deed of it as security for whatever sums of money they might advance. This deed was dated May 10, 1909, and recorded December 20, 1909. Afterwards the Lauhoffs were not able to raise the full amount required to redeem. When the mortgage had been satisfied and the whole transaction closed, Mr. and Mrs. Lauhoff, who then held the title, conveyed to Mr. and Mrs. Fischer on the 4th day of March, 1910, an undivided one-half interest in the farm, including the 20-acre parcel covered by the Brown mortgage. The day following a memorandum was indorsed on the $29,878.89-note to the effect that the note with the mortgage "was paid in full by one-half interest in the old Butler farm, so we have no claim against it whatsoever of said mortgage." This memorandum was signed by Mr. and Mrs. Lauhoff. On the same day

an indorsement was made on the $37,365.01-note to the effect that the note "was returned to A. T. Fischer and not to be used; the mortgage was mislaid and cannot be found; if found to be returned to A. T. Fischer because it was paid by a deed in full, and we have no claim against it because it was paid in full." This memorandum was also signed by Mr. and Mrs. Lauhoff. On the same day the deed of the 20 acres included in the Brown mortgage was recorded. It had previously been conveyed by Mr. and Mrs. Fischer to Mr. and Mrs. Lauhoff, but was withheld of record.

On the 31st day of December, 1919, Mr. and Mrs. Lauhoff sold the farm to the Woodward & Watson Realty Company by warranty deed purporting to convey the entire interest. This deed was recorded January 9, 1920. The incumbrance on the farm at that time consisted of a mortgage of $55,000. The Woodward & Watson Realty Company took the farm subject to this mortgage and were to pay Mr. and Mrs. Lauhoff $100,000 in certain securities and subject to certain conditions. The securities were delivered to a Mr. Maurer to be held in trust. He still held the securities at the time of the trial, except $8,000 which had been agreed to be paid to him, as a commission. At the time of the making and delivery of the deed by the Lauhoffs, an agreement was executed between Mr. Lauhoff and Mr. Higgins on behalf of the realty company whereby Lauhoff agreed to secure a three-year extension of the mortgage. It further provided that in default of the extension, $52,000 of the bonds should be used to procure another loan to take care of the mortgage, and that $50,000 of the bonds should be deposited with Mr. Maurer until the renewal was accepted.

The deed of a half interest in the farm from the Lauhoffs to the Fischers made on the 4th day of March, 1910, had not been put on record and was not

on record at the time of the sale to the Woodward & Watson Realty Company. When the company went into possession Fischer put his deed on record and filed this bill to remove the cloud which he claims was put on his title to an undivided one-half interest.

The claim of the defendants Anthony Lauhoff and Anna Lauhoff is stated by the circuit judge as follows:

"Defendants Lauhoff deny that the deed of March 4, 1910, to plaintiffs of a one-half interest in the Butler farm is a valid deed; they admit their signatures to said instrument but claim they have never acknowledged it before a notary public; they claim that this deed is fraudulent and must have been signed by them before any description was written in the deed."

These defendants also claim that plaintiff Alexander T. Fischer acted as their agent in handling this farm and other property for them, and that as such he has come into possession of large sums of money belonging to them for which he has made no accounting, and they ask that an accounting be ordered by the court.

The defendant Woodward & Watson Realty Company claims that it was a purchaser in good faith, that it had no notice of plaintiffs' rights in the property; that they had no rights; that the deed under which they claim title to an undivided half interest is invalid and inoperative, and constitutes a cloud upon its title and asks that the court remove it.

Upon the hearing the circuit judge found that the deed of March 4, 1910, was a good and valid conveyance and vested in the plaintiffs an undivided one-half interest in the farm; that the deed from Lauhoffs to the Woodward & Watson Realty Company was a cloud upon plaintiffs' title; that Woodward & Watson Realty Company was not a *bona fide* purchaser, but had notice of plaintiffs' rights; and that an accounting should be had between the plaintiffs and the de-

fendants Anthony- Lauhoff and Anna Lauhoff. From the decree entered all parties have appealed.

We think the circuit judge was correct in his conclusion that the deed of March 4, 1910, is a good and valid deed of conveyance, and that it vested in the plaintiffs an estate in fee simple to an undivided one-half interest in the land in question. The history of the dealings between the parties both before and after the conveyance, as well as the written evidence, amply supports this conclusion.

The important question involved is whether the Woodward & Watson Realty Company was a *bona fide* purchaser. The plaintiffs claim that their possession of the property at the time of the sale was notice of their interests sufficient to put the purchaser on inquiry.

"Open, notorious and exclusive possession of real estate, under an apparent claim of ownership, is notice to those who subsequently deal with the title, of whatever interest the one in possession has in the fee." Wade on Notice (2d. Ed.), § 273.

Plaintiffs were not maintaining this sort of possession at the time of the sale. The character of their possession is correctly stated in the opinion of the circuit judge as follows:

"Prior to the time of the purchase and sometime during December, 1919, Mr. Higgins and Mr. Jacobs, agents for defendant Woodward & Watson Realty Company, visited the property to inspect it with a view to purchase; they found the land covered with snow; no one lived in the place and no animals of any kind were there; there was no barn on the premises; the windows of one of the buildings on the farm were boarded up and the blinds were closed on the windows of the other building. There were some advertising signs of merchants along the Gratiot road; there were one or more 'for sale' signs, one followed by 'phone Market 1230, Detroit;' there were no tracks in the snow indicating there was anyone on or about

the farm; there was nothing on or about the premises giving notice to Messrs. Higgins and Jacobs of plaintiffs' interest in the property."

From this evidence it is clear that plaintiffs' possession was not such as to constitute notice to the buyer of their interest in the property.

It is also claimed by the plaintiffs that the Woodward & Watson Realty Company was not a *bona fide* purchaser because the records in the register of deeds' office show four mortgages covering the land in question, in which the plaintiffs have joined as mortgagors with Anthony Lauhoff and Anna Lauhoff, and that the presence of these mortgages on the records was notice to the company of the plaintiffs' title. After the Lauhoffs had acquired title to the land by deed from the plaintiffs, the following mortgages were given in which the plaintiffs joined as mortgagors. One for $20,000, given on March 12, 1912, and recorded March 13, 1912, to the Ullrich Savings Bank. Another for $16,000, given February 8, 1910, and recorded February 25, 1910, and a third was for $32,000, given March 11, 1915, and recorded March 15, 1915, the fourth was for $55,000, given December 28, 1917, and recorded December 29, 1917. At the time of the purchase by the Woodward & Watson Realty Company, all of these mortgages had been paid and discharged except the fourth. Of this mortgage the defendant had actual knowledge. The abstract which was examined by its attorney showed that the plaintiffs formerly owned the land and had deeded it to the Lauhoffs on May 10, 1909. That thereafter they joined in these mortgages.

Were these mortgages and the plaintiffs' former ownership of the title sufficient to put the purchaser on inquiry as to the interest of the mortgagors in the premises? A similar question was indirectly before this court in *Peters* v. *Cartier*, 80 Mich. 124 (20 Am.

St. Rep. 508).    Mr. Peters had title to the land in
question, but it was not of record.    He had, however,
executed two mortgages which were of record.    While
the decision of the case turned on the fact that
Cartier purchased the property with actual knowledge
of Peters' title, the court, speaking of the mortgages,
said that they were an assertion of title in the mort-
gagor, that "Cartier had actual knowledge of these
mortgages, and this alone should have been sufficient
in morals, if not in law, to have caused him to in-
vestigate the title."    Mr. Peters had no record title
to the land in question and never had.    It may be
doubted whether a recorded mortgage by a grantee
not in the chain of title would be sufficient notice to
require a purchaser to make further inquiry, but we
think there can be no question as to its sufficiency
where, as in the instant case, the mortgagors were not
strangers to the title, and the purchaser had knowledge
of the mortgage.

"The rule has always been that the grantee or mort-
gagee must search for conveyances and mortgages
made by any one who has held the title." *Pyles* v.
*Brown,* 189 Pa. St. 164 (42 Atl. 11, 69 Am. St. Rep.
794).

"Any conveyance which under these laws is en-
titled to be recorded, should be held to be constructive
notice to all persons of the interest conveyed by any
person in the chain of title from the government to
the last purchaser." *Edwards* v. *McKernan,* 55 Mich.
520.

Before the Woodward & Watson Realty Company
parted with the consideration and received a deed of
the premises in question, it knew that there was a
recorded mortgage for $55,000 covering the property;
that the plaintiffs were mortgagors in this mortgage
and that they were in the chain of title.    The facts
were sufficient to put a prudent man upon inquiry as

to their interests. A knowledge of such facts must be held to be equivalent to knowledge of plaintiffs' unrecorded deed. As all of these parties lived in the city of Detroit, it would not have been a difficult matter to have inquired of plaintiffs as to their interests. In view of these facts, we think it cannot be said that the defendant company was a *bona fide* purchaser. It must be held to have had notice of plaintiffs' unrecorded deed.

Accounting. The defendants Anthony C. W. Lauhoff and Anna Lauhoff in their pleadings ask for an accounting from plaintiff Alexander T. Fischer of all moneys received by him in his various transactions with them. On March 4th and 5, 1910, a settlement was had between the parties, and any indebtedness from Fischer was discharged in consideration of an undivided one-half interest in the farm. The accounting should be confined to all transactions between them subsequent to the date of that settlement. In this respect, the decree will be modified. In all other respects it is affirmed. Plaintiffs will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.